LOGSDON et al., Appellants and Cross–Appellees,

v.

FIFTH THIRD BANK OF TOLEDO, Appellee and Cross–Appellant;
Progressive Casualty Insurance Company, Appellee.

[Cite as *Logsdon v. Fifth Third Bank of Toledo* (1994), 100 Ohio App.3d 333.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–93–225.

Decided Dec. 23, 1994.

334

*Thomas J. Murray, John T. Murray, Alicia Wolph* and *John Huffman,* for appellants and cross-appellees.

*Theodore M. Rowen, Teresa L. Grigsby* and *James P. Silk,* for appellee and cross-appellant Fifth Third Bank of Toledo.

*Paul P. Eyre* and *Ernest E. Vargo,* for appellee Progressive Casualty Insurance Company.

*Per Curiam.*

This case is an appeal from a judgment of the Lucas County Court of Common Pleas. Appellants, Lorraine Logsdon and other members of the certified class (collectively referred to as "Logsdon" or "the class"), are appealing the trial court's grant of summary judgment in favor of appellees, Fifth Third Bank of Toledo ("Fifth Third") and Progressive Casualty Insurance Company ("Progressive"). For the reasons discussed below, we reverse the decision of the trial court as to Fifth Third and affirm as to Progressive.

The facts of this case are as follows. In September 1987, Logsdon purchased an automobile and financed the purchase through a loan from Fifth Third. The loan agreement provided that the automobile would be collateral for the loan. In addition, the loan agreement provided that the borrower promised to maintain insurance on the automobile. If the borrower failed to do so, the loan agreement provided that Fifth Third itself would be entitled to obtain insurance as follows:

"Borrower expressly agrees to obtain and maintain at his own expense, for so long as any amount remains unpaid hereunder, insurance protecting the interest of both himself and Bank against loss or damage to or destruction of the collateral described above. Said insurance policy shall be in such form and amounts as Bank may require, shall include loss payable clauses in favor of Bank, and shall be delivered to Bank within 15 days after the date hereof. IF BORROWER FAILS TO OBTAIN OR MAINTAIN SUCH INSURANCE, OR FAILS TO FURNISH SATISFACTORY EVIDENCE THEREOF UPON RE-QUEST, BANK MAY (BUT SHALL NOT BE REQUIRED TO AND WITH-OUT PREJUDICE TO ITS RIGHTS IF IT DOES NOT) OBTAIN SUCH INSURANCE PROTECTING EITHER THE INTEREST OF BANK AND BORROWER OR THE INTEREST OF BANK ALONE. IN SUCH EVENT BORROWER AGREES TO REIMBURSE THE BANK FOR THE COSTS THEREOF AT THE ANNUAL PERCENTAGE RATE APPLICABLE TO THE PRINCIPLE [*sic*] LOAN BALANCE."

Pursuant to an agreement with Fifth Third, Progressive sent a "Notice of Requirement" on behalf of Fifth Third to Logsdon, reminding her that "the terms of your loan agreement with us require you to maintain Comprehensive and Collision Insurance * * *." However, Logsdon failed to obtain automobile insurance. Subsequently, Fifth Third purchased insurance from Progressive ("the insurance policy"). The insurance policy provided for the usual collision and comprehensive coverage of Logsdon's automobile. In addition, the insurance policy included the following endorsements: the excess charge endorsement that reimbursed the bank for mechanics' lien expenses, repossession expenses and storage and towing costs incurred in repossessing the collateral; the conversion and confiscation endorsement that reimbursed the bank for loss of the vehicle due to conversion, embezzlement or secretion by the borrower or lawful confiscation of the vehicle by a governmental body; the limited dual interest endorsement that reimbursed the bank to the extent that the borrower's equity interest in the collateral did not exceed the outstanding loan balance; the special settlement option/waiver of actual cash value endorsement that reimbursed the bank for the entire loan balance, including all charges for the collateral protection insurance; the experience rating refund endorsement that entitled the bank to a refund from the premiums charged based on the losses paid; and the worldwide coverage endorsement that extended coverage to include any country in the world that had an established international agreement with the United States covering the recovery of any collateral from their country.

Upon obtaining the Progressive insurance policy for Logsdon's vehicle, Fifth Third added the cost of such insurance to the outstanding balance of Logsdon's loan. Further, upon writing the insurance, Progressive sent Logsdon a memo-

randum of insurance, describing the nature and cost of the coverage and naming Fifth Third as the insured.

Logsdon contended that the cost of the collateral protection insurance policy issued by Progressive to Fifth Third was nearly double the cost of a simple comprehensive and collision insurance policy. Therefore, Logsdon filed the present class action against Fifth Third and Progressive. The class consisted of people who borrowed money from Fifth Third to finance the purchase of their vehicles. Logsdon claimed that Fifth Third wrongfully charged her and the other members of the class for the collateral protection insurance issued by Progressive on the ground that such insurance was more than the basic comprehensive and collision insurance authorized under the loan agreement.

Subsequently, Fifth Third and Progressive moved for summary judgment on all claims on the ground that the Progressive insurance policy was authorized by the terms of the loan agreement. On July 26, 1993, the trial court granted summary judgment in favor of Fifth Third and Progressive.

It is from such judgment that Logsdon raises the following six assignments of error:

"First Assignment of Error: The record contains compelling evidence that Fifth–Third charged borrowers with contractually unauthorized and undisclosed coverages and, therefore, the trial court erred by granting summary judgment to defendants on Logsdon's breach of contract claim.

"Second Assignment of Error: There is compelling evidence of record that defendants engaged in a course of conduct which constituted a negligent disregard for the rights of the borrowers and, therefore, the trial court erred by granting summary judgment to the defendants on plaintiff's negligence claims.

"Third Assignment of Error: There is compelling evidence of record to support plaintiff's claim that defendants secretly imposed contractually unauthorized insurance coverages and interest costs on the borrowers, which constituted a breach of defendants' duty of good faith and fair dealings to the borrowers and, therefore, it was error for the trial court to grant summary judgment to defendants on plaintiff's bad faith claim.

"Fourth Assignment of Error: There is compelling evidence of record to support plaintiff's claim that defendants secretly imposed unauthorized insurance coverages and costs on borrowers and, therefore, the trial court erred by granting summary judgment to defendant[s] on plaintiff's breach of fiduciary duty claim.

"Fifth Assignment of Error: The trial court erred by granting summary judgment to Fifth–Third on plaintiff's BHCA claim, 12 U.S.C. § 1972, because plaintiff plead[ed] and the record reveals facts sufficient to show defendants' CPI

program was anti-competitive; the banking, practice at issue is unusual in the industry; and the practice benefits the bank.

"Sixth Assignment of Error: The trial court erred by granting summary judgment to Progressive on plaintiff's tortious interference with contract claim because there is evidence that Fifth–Third breached its loan agreements with borrowers with the aid of Progressive."

It is also from such judgment that Fifth Third raises the following cross-assignment of error:

"The trial court erred only insofar as it did not make clear the disposition of Fifth Third's counterclaim."

Before addressing Logsdon's specific assignments of error, we would note the standard of review governing the grant of denial of summary judgment. Civ.R. 56(C) states in pertinent part as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio held that summary judgment is appropriate as follows:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

Keeping the above standard in mind, we now turn to the assignments of error raised by Logsdon.

As her first assignment of error, Logsdon argues that Fifth Third breached the loan agreement in obtaining insurance coverage in excess of what was authorized pursuant to the loan agreement. Specifically, Logsdon argues that the terms of

the loan agreement authorized Fifth Third to purchase only comprehensive and collision insurance. Logsdon argues that Fifth Third thus breached the loan agreement by obtaining the Progressive insurance policy that included coverage beyond that of basic comprehensive and collision coverage. In contrast, Fifth Third argues that the language of the loan agreement entitles the bank to obtain insurance in addition to collision and comprehensive coverage. Specifically, Fifth Third argues that the following additional endorsements were proper under the terms of the loan agreement: an experience rating refund endorsement, an excess charge endorsement, a worldwide coverage endorsement, a conversion and confiscation endorsement, a limited dual interest endorsement, and a special settlement option/waiver of actual cash value endorsement.

It is well-settled law that courts will not construe contract language that is clear and unambiguous on its face. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 290–291, 509 N.E.2d 411, 413. However, where there does exist an ambiguity, the court may construe the language of the contract for " '[t]he construction of written contracts and instruments of conveyance is a matter of law.' " *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264, quoting *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. The court's duty is to construe the contract "so as to give effect to the intention of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. Further, in construing ambiguities in contract language the court may use longstanding rules of construction. See, *e.g., Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 16 O.O.3d 441, 442, 406 N.E.2d 515, 517 (ambiguities in a contract are to be resolved against the drafter).

Thus, in reviewing this assignment of error, this court must first decide whether an ambiguity exists as to the loan agreement language governing Fifth Third's right to obtain insurance coverage. The loan agreement paragraph that governs Fifth Third's right to obtain insurance in the event that the borrower fails to do so reads as follows:

"Borrower expressly agrees to obtain and maintain at his own expense, for so long as any amount remains unpaid hereunder, insurance protecting the interest of both himself and Bank against loss or damage to or destruction of the collateral described above. Said insurance policy shall be in such form and amounts as Bank may require, shall include loss payable clauses in favor of Bank, and shall be delivered to Bank within 15 days after the date hereof. IF BORROWER FAILS TO OBTAIN OR MAINTAIN SUCH INSURANCE, OR FAILS TO FURNISH SATISFACTORY EVIDENCE THEREOF UPON RE-QUEST, BANK MAY (BUT SHALL NOT BE REQUIRED TO AND WITH-OUT PREJUDICE TO ITS RIGHTS IF IT DOES NOT) OBTAIN SUCH

INSURANCE PROTECTING EITHER THE INTEREST OF BANK AND BORROWER OR THE INTEREST OF BANK ALONE. IN SUCH EVENT BORROWER AGREES TO REIMBURSE THE BANK FOR THE COSTS THEREOF AT THE ANNUAL PERCENTAGE RATE APPLICABLE TO THE PRINCIPLE [*sic*] LOAN BALANCE."

Fifth Third argues that because it is authorized to obtain insurance "protecting the interest of the bank," that it is authorized to obtain additional insurance beyond that of collision and comprehensive coverage. Specifically, Fifth Third argues that to protect its interest it is entitled to obtain an excess charge endorsement, a conversion and confiscation endorsement, a limited dual interest endorsement, an experience rating refund endorsement, a worldwide coverage endorsement, and special settlement option/waiver of actual cash value endorsement.

However, upon review of the loan agreement, this court finds there does exist an ambiguity as to what insurance Fifth Third was authorized to obtain if the borrower failed to do so. The parties do not dispute that if the borrower had obtained basic collision and comprehensive insurance coverage, the loan agreement would have been satisfied and Fifth Third would not have been entitled to obtain any other insurance. However, in the event a borrower fails to obtain insurance, Fifth Third is entitled to obtain "such insurance." The phrase "such insurance" refers to the insurance which the borrower was initially entitled to obtain, *i.e.*, basic collision and comprehensive coverage.

■ Therefore, we find that the language of the loan agreement is ambiguous. Further, it is well-settled law that ambiguities are construed against the drafter. See *Cent. Realty, supra*. Therefore, we construe the language of the loan agreement as limiting the bank to obtaining collision and comprehensive coverage if the borrower fails to obtain such coverage. Therefore, we reverse the trial court's judgment that the bank was entitled to charge Logsdon for the cost of obtaining insurance coverage other than comprehensive and collision insurance coverage. Accordingly, the first assignment of error is found well taken.

■ The second and fourth assignments of error will be addressed together. As the second assignment of error, Logsdon argues the trial court erred in dismissing the negligence claim against Fifth Third and Progressive. Specifically, Logsdon argues that Fifth Third was acting as her agent in obtaining the insurance policy and therefore Fifth Third owed her a special duty of reasonable care. In addition, Logsdon argues that Progressive had assumed an insurer/insured relationship with her and therefore also owed her a special duty of reasonable care. As her fourth assignment of error, Logsdon argues that in

obtaining the insurance policy a fiduciary relationship arose with both Fifth Third and Progressive.

It is well-settled law that in order to prevail on a negligence claim the existence of the special duty owed by the defendant must be shown. *Gelbman v. Second Natl. Bank of Warren* (1984), 9 Ohio St.3d 77, 78, 9 OBR 280, 280–281, 458 N.E.2d 1262, 1262–1263. In *Feldman v. Howard* (1967), 10 Ohio St.2d 189, 193, 39 O.O.2d 228, 230, 226 N.E.2d 564, 567, quoting *Kauffman v. First–Cent. Trust Co.* (1949), 151 Ohio St. 298, 306, 39 O.O. 137, 141, 85 N.E.2d 796, 800, the court held that " '[t]o establish actionable negligence it is fundamental that the one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of * * *.' " Further, the existence of such a duty is a question of law for the court. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269–270.

In *Umbaugh Pole Bldg. Co. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320, paragraph one of the syllabus, the Supreme Court of Ohio addressed the issues of whether a special duty of care is created in the relationship between a debtor and creditor:

"The relationship of debtor and creditor *without more* is not a fiduciary relationship. A fiduciary relationship may be created out of an informal relationship, but this is done *only when both the parties understand that a special trust or confidence has been reposed.*" (Emphasis added.)

We find that there was no evidence to suggest that there was any relationship between Logsdon and Fifth Third Bank except for that of the relationship between a debtor and creditor. The fact that the loan agreement allowed Fifth Third to obtain insurance where the borrower failed to do so did not transform the business relationship into a fiduciary relationship.

Further, we find there was no special relationship between Logsdon and Progressive concerning Progressive's issuance of the insurance policy to Fifth Third. It was Fifth Third, and not Logsdon, which procured the insurance policy with Progressive. We do not find the mere fact that Progressive mailed notices to Logsdon concerning the insurance policy created any special relationship.

There is no factual basis to support a finding that any special relationship or fiduciary duty was created between Logsdon and either Fifth Third or Progressive regarding the procurement of the insurance policy.

In the absence of such relationship or duty, a claim sounding in negligence will not lie. Accordingly, the second and fourth assignments of error are found not well taken.

■ As the third assignment of error, Logsdon argues that the trial court erred in dismissing the bad faith claim against Fifth Third and Progressive. Specifically, Logsdon argues that Progressive was acting as her insurer and that Fifth Third was acting as an insurance agent in obtaining the Progressive insurance policy. Therefore, Logsdon argues, both Progressive and Fifth Third breached an insurer's duty of good faith owed to her as the insured.

As we stated under the second assignment of error, Progressive was acting only as an insurer of Fifth Third and not as Logsdon's insurer. It follows then that Fifth Third did not act in the role of Logsdon's insurance agent when Fifth Third purchased the insurance policy from Progressive. Therefore, neither Fifth Third nor Progressive owed Logsdon an insurer's duty of good faith. Accordingly, the third assignment of error is found not well taken.

■ As the fifth assignment of error, Logsdon argues that the trial court erred in granting summary judgment in favor of Fifth Third on her unfair banking practice claim. Specifically, Logsdon claims that Fifth Third violated the anti-tying (an arrangement by one party to sell one product only on the condition that the buyer also purchase a different product) provisions of the Bank Holding Company Act, Section 1972, Title 12, U.S.Code. Section 1972 of the Bank Holding Company Act is intended to "prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." *McCoy v. Franklin Sav. Assn. & Mtge. Mgt. Co.* (C.A.7, 1980), 636 F.2d 172, 175. In order to prevail under the anti-tying provision of Section 1972, three essential elements must be demonstrated: "(1) an anti-competitive tying arrangement, (2) the banking practice at issue is unusual in the banking industry, and (3) the practice must benefit the bank." *Sanders v. First Natl. Bank & Trust Co. in Great Bend* (C.A.6, 1991), 936 F.2d 273, 278.

We find there is no evidence to show that Logsdon was required to purchase collateral insurance from Fifth Third as a condition or requirement of receiving her automobile loan. The loan agreement itself and notice of required insurance informed the borrower that the borrower has an obligation to procure collision and comprehensive insurance without any restriction as to what insurance company the borrower deals with. It is only if the borrower fails to obtain such insurance that Fifth Third is entitled to obtain insurance in order to protect its own interest. Therefore, we find there is no evidence that Fifth Third agreed to finance the purchase of automobiles only on the condition that a prospective borrower obtain insurance through Fifth Third. Accordingly, the fifth assignment of error is found not well taken.

As a sixth assignment of error, Logsdon argues that the trial court erred in granting summary judgment as to the tortious interference with contract claim against Progressive. Specifically, Logsdon argues that Progressive wrongfully induced Fifth Third to procure insurance in violation of the loan agreement.

Ohio courts have adopted the definition of "tortious interference with contract" as stated in Section 766 of the Second Restatement of Torts. See, *e.g.*, *Developers Three v. Nationwide Ins. Co.* (1990), 64 Ohio App.3d 794, 798, 582 N.E.2d 1130, 1132–1133. Section 766 of the Second Restatement of Torts reads as follows:

"One who intentionally and improperly interferes with the performance of a contract * * * between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." 4 Restatement of the Law 2d, Torts (1979) 7, Section 766.

In *Norton v. Popper* (June 19, 1990), Franklin App. No. 89AP–906, unreported, 1990 WL 83985, the court stated that "the conduct focused upon [in Section 766] is what a defendant does to prevent a third person from performing his contract with plaintiff." The *Norton* court further held that the "inducement may be by threat, persuasion or intimidation * * * and must be the legal cause of plaintiff's loss." *Id.*

In the present case, there is no evidence that Progressive ever induced Fifth Third into charging Logsdon for insurance coverage greater than that authorized under the loan agreement. Progressive simply sold the insurance policy to Fifth Third as the bank requested. There is no evidence that Progressive induced Fifth Third to pass on to Logsdon charges for insurance that exceeded those authorized under the loan agreement. Therefore, as a matter of law, we find the trial court properly dismissed Logsdon's claim for tortious interference against Progressive. Accordingly, the sixth assignment of error is found not well taken.

As its cross-assignment of error, Fifth Third essentially asks that this court clarify the trial court's ruling on Fifth Third's counterclaim.

As its counterclaim, Fifth Third sought judgment individually and collectively against all class members who failed to pay the amount of insurance premiums added to their loan balance. The trial court, in granting summary judgment in favor of Fifth Third, did not make clear whether or not it was rendering judgment in favor of Fifth Third on its counterclaim. However, in light of our disposition of Logsdon's first assignment of error and the resulting remand to the trial court, Fifth Third's cross-assignment of error is rendered moot.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellees pay the court costs of this appeal.

*Judgment accordingly.*

GLASSER, SHERCK and HADLEY, JJ., concur.

RONALD E. HADLEY, J., of the Third Appellate District, sitting by assignment.