**Regina Oliver McCLAIN, individually and on behalf of all persons similarly situated, Plaintiff–Appellant,**

v.

**SOUTH CAROLINA NATIONAL BANK, a state chartered bank; Progressive Casualty Insurance Company, an insurance company, Defendants–Appellees,**

**American Bankers Association, Amicus Curiae.**

**No. 95–2724.**

United States Court of Appeals, Fourth Circuit.

Argued July 17, 1996.

Decided Jan. 22, 1997.

---

**ARGUED:** John Timothy Murray, Sr., Murray & Murray, Sandusky, OH, for Appellants. Harold Simmons Tate, Jr., Hamilton Osborne, Jr., Sinkler & Boyd, P.A., Columbia, SC; Thornwell Forrest Sowell, III, Sowell, Todd, Laffitte, Beard & Watson, L.L.C., Columbia, SC, for Appellees. **ON BRIEF:** Sylvia Antalis, MURRAY & MURRAY, Sandusky, OH; Elizabeth Van Doren Gray, Elizabeth G. Howard, Glenn, Irvin, Murphy, Gray & Stepp, L.L.P., Columbia, SC, for Appellants. Jeffrey A. Jacobs, Nelson, Mullins, Riley & Scarborough, L.L.P., Columbia, SC, for Appellee Progressive Casualty. John J. Gill, Michael F. Crotty, American Bankers Association, Washington, DC, for Amicus Curiae.

Before MURNAGHAN, Circuit Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.

### OPINION

BUTZNER, Senior Circuit Judge:

Regina McClain appeals the orders of the district court granting summary judgment in favor of South Carolina National Bank and Progressive Casualty Company and denying her motion for class certification. We affirm.

### I

In November 1988, Regina McClain financed the purchase of a new Dodge pickup truck through South Carolina National Bank (SCNB). As part of the financing agreement, McClain agreed to purchase and maintain comprehensive and collision insurance on the truck until her debt was extinguished. If McClain failed to properly insure the truck, SCNB reserved the right to purchase insurance and add the cost of coverage to her debt. Specifically, the agreement stated:

> Until you have fully paid everything you owe, you agree ... to pay all necessary taxes, insurance premiums, and other charges in connection with the motor vehicle. If you do not pay any of these amounts, we can pay them for you. If we do, you agree to repay us for these amounts, including a credit service charge at the Annual Percentage Rate shown in the Disclosures, and we may add any of these amounts which we pay to your debt.

McClain maintained adequate property insurance on the truck through South Carolina Farm Bureau until her policy expired in November 1989. Shortly thereafter, SCNB sent McClain a "Notice of Requirement," reminding her of her obligation to insure the truck for the duration of the loan. The notice stated:

> According to our most recent data: The insurance information we have on file for you is no longer in force....
>
> If you do currently have insurance on the property listed on the notice, please have your agent send us a copy of the policy immediately so that we will not charge you for insurance coverage.
>
> If you purchase the required insurance through your own agent, *we must receive a copy of your policy within the next 30 days.*
>
> . . .
>
> Any coverage issued will cover the period 11/06/89–11/30/92. Your premium for this coverage will be $2948.00. (emphasis in original).

Although McClain received this notice and read it, she did not complain about the kind of insurance, which SCNB proposed to buy, or the amount of the premium, which SCNB would add to her debt. Nor did she exercise her right to purchase her own insurance. After 30 days passed, SCNB purchased a collateral protection insurance policy from Progressive Casualty Company of Ohio and added the premium, plus charges, to McClain's loan.

In a letter advising McClain that it had purchased insurance, the bank again informed her of the premium, in the amount of $2,948.00 plus finance charges of $718.33. The letter also told her that if she purchased her own insurance, the unearned premium would be removed from her account. Enclosed with the letter was a copy, without all endorsements, of the collateral insurance policy. The policy disclosed the premium of $2,948 plus charges for a period of 37 months (Nov. 6, 1989, to Nov. 30, 1992). The policy also explained that it afforded maximum cov-

erage of $7,987.20, the balance of the loan. Again, McClain did not protest the bank's interpretation of the right conferred on it by the loan agreement when McClain breached her contract to keep the truck insured. SCNB cancelled the collateral insurance policy when McClain purchased her own comprehensive and collision insurance in February 1991. SCNB credited McClain with $1,027.38, the amount of the unearned premium.

The purpose of collateral protection insurance is to protect a creditor's interest in the collateral pledged for a loan in the event that the item is destroyed and the debtor defaults on his loan. *See R.T. Hepworth Co. v. Dependable Insurance Co.*, 997 F.2d 315, 316 (7th Cir.1993). SCNB had entered into a "Lender's Collateral Protection Participation Agreement" with Progressive in 1986. Under this agreement, when a debtor failed to properly insure an item that SCNB had a security interest in, Progressive would issue a collateral protection insurance policy on that item. Progressive also paid SCNB commissions of 26% for each collateral protection policy issued under the agreement. SCNB would deduct these commissions from the premiums it paid to Progressive. The deductions, however, were credited to an SCNB reserve account and then paid to the Sterling Corporation, an SCNB subsidiary licensed by the South Carolina Department of Insurance.

McClain filed both an individual and a class action suit against SCNB and Progressive in September 1992. She alleged that the collateral protection insurance premiums added to her account between November 1989 and February 1991 contained excessive and concealed coverages not authorized by the loan agreement. SCNB filed a counterclaim to recover the loan balance, which was secured by a lien, and the unpaid insurance premiums, plus interest. After the suit was filed, however, McClain paid off the principal and interest on her loan and SCNB cancelled its lien on her truck and sent the title to her. McClain, however, did not pay the earned premium of the collateral insurance SCNB had purchased.

After McClain withdrew several of her original claims, SCNB and Progressive moved for summary judgment on her remaining claims. These claims were breach of contract, breach of duty of good faith and fair dealing, breach of contract accompanied by a fraudulent act, tortious interference with a contractual relationship, and illegal tying arrangements in violation of the Bank Holding Company Act, 12 U.S.C. § 1972(1).

The central allegation in each of McClain's claims, which are based on South Carolina law, is that SCNB charged the cost of unauthorized, excessive and concealed insurance to her account.

The district court granted SCNB's summary judgment motions and denied McClain's motion for class certification. The court found that McClain had not suffered any damages. The court also denied McClain's subsequent motion for relief from judgment under Fed.R.Civ.P. 60(b) in which she alleged damages based on newly discovered evidence. McClain appeals each of these orders. On SCNB's motion, the district court also dismissed SCNB's mandatory counterclaim without prejudice to reinstatement if McClain prevailed on appeal. If SCNB prevailed, it agreed to dismissal with prejudice.

II

We review summary judgment *de novo*. *Austin v. Owens–Brockway Glass Container Inc.*, 78 F.3d 875, 877 (4th Cir. 1996). Summary judgment is proper if the movant can show that there is no material fact in dispute when the evidence is viewed in the light most favorable to the other party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). If the nonmovant fails to establish an essential element of its claim, summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Application of these principles, we conclude, coupled with the undisputed evidence showed that McClain suffered no damage and that summary judgment was appropriate. We agree with the district court that the undisputed evidence shows McClain never reimbursed SCNB for the cost of the insurance it

purchased. Promptly upon McClain's payment of the amount of her secured loan (without any reimbursement for the cost of SCNB's collateral insurance), SCNB released its lien against the truck title and returned the title to her.

█ The district court noted that SCNB had not moved for summary judgment on its counterclaim. The court stated, however, if the counterclaim were tried it would protect McClain from "unauthorized or otherwise inappropriate" charges. From these remarks, it is evident that the district court correctly recognized that the loan agreement did not require SCNB to purchase any insurance. Nevertheless, when SCNB exercised its option to do so, an implied contract arose requiring SCNB to comply with the terms of the loan agreement and South Carolina law. Cf. Logsdon v. Fifth Third Bank of Toledo, Progressive Casualty Ins. Co., 100 Ohio App.3d 333, 654 N.E.2d 115 (1994). In Logsdon, the borrower was required to maintain insurance protecting against "loss or damage to or destruction" of the collateral, which the court interpreted to mean collision and comprehensive insurance. If the borrower did not maintain "such insurance," the lender was authorized (but not required) to obtain "such insurance" and charge the borrower for the cost. The court held that the phrase "such insurance" limited the lender to charging the cost of collision and comprehensive insurance to the borrower.

The McClain/SCNB loan agreement does not refer to "such insurance." Nor did the loan agreement address the type, coverage, or premium of insurance that SCNB was authorized to buy. But SCNB would have to prove that the insurance it bought was consistent with the loan agreement if it sought recovery on its counterclaim.

We find that McClain has introduced no evidence that she suffered any damages. She introduced no evidence that SCNB owed her any money. In contrast, it was she who owed SCNB, at least for the cost of collision and comprehensive insurance, when she allowed her coverage to lapse. We affirm the district court's order granting summary judgment for SCNB and Progressive on the claims alleging violations of South Carolina law.

### III

█ McClain's claim under the anti-tying amendments to the Bank Holding Company Act, 12 U.S.C. § 1972, also lacks merit. This statute provides in part:

(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

* * *

(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service.

An essential element of an anti-tying claim is that the banking practice at issue is unusual in the banking industry. See Kenty v. Bank One, 92 F.3d 384, 394 (6th Cir.1996). It is not unusual for a bank to require a borrower to insure the collateral, nor is it unusual for a bank to protect its interest by insuring the collateral at the expense of the borrower when the borrower fails to do so. See Kenty, 92 F.3d at 395. SCNB did not require McClain to purchase any insurance from the bank. She was always free to purchase her own insurance. Only when she breached the loan agreement did the SCNB act to protect its interest in the collateral that secured its loan to McClain. Under circumstances quite similar to those in this case, courts have recently found no violation of the Act. See Kenty, 92 F.3d at 394–95; Logsdon, 100 Ohio App.3d at 342, 654 N.E.2d at 120–21.

### IV

█ This court should not interfere with a district court's ruling on class certification unless we find an abuse of discretion. Stott v. Haworth, 916 F.2d 134, 139 (4th Cir.1990). In this case, the district court was within its

discretion to deny McClain's motion for class certification based on her failure to point to any damages in support of her claims. When a buyer defaults on its contract to carry insurance on collateral in a credit sale, S.C.Code §§ 37–2–208(1) and (2) (Rev.1989) authorizes the seller to purchase insurance at the buyer's expense. The rates for the collateral insurance SCNB purchased from Progressive were set by the South Carolina insurance commissioner pursuant to S.C.Code § 38–73–910.

Federal Rule of Civil Procedure 23(a) requires as prerequisites to a class action: "(3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The district court found that McClain suffered no "deprivation" or "subtraction from wealth" for which damages would be appropriate. Although McClain alleges that the disputed premiums were improperly added to her loan balance, she admits that she never paid any of the premiums or finance charges. Furthermore, when the original loan balance was paid off in August 1993, SCNB returned the title of the truck free of any lien to McClain, even though she had not paid any of the collateral insurance premium.

■ When reviewing a class certification motion for typicality under Rule 23(a)(3), courts generally do not inquire into the underlying merits of the claim to determine whether the plaintiff has suffered damages. *Dorfman v. First Boston Corp.*, 62 F.R.D. 466, 472–73 (E.D.Pa.1973). Even if we assume that the district court should have ruled on the class certification motion before it considered the merits of the case at summary judgment, its ultimate conclusions were correct. On appeal, we have had the benefit of reviewing the whole record, and it is evident that McClain suffered no damages. Since McClain did not suffer a cognizable injury similar to the injuries suffered by the other class members, *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706 (1974), her claims are "atypical" from the claims of the rest of the class. *See generally* *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir.1993).

McClain did not protest the amount of collateral insurance premiums disclosed to her. Nor did she protest the fact that the coverage was for the full balance of the loan rather than the fair market value of the truck. Under these circumstances, McClain's own inaction is evidence that she will not "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4).

## V

■ We also conclude that the district court was correct in denying McClain's Rule 60(b) motion for relief from judgment on account of newly discovered evidence under Fed.R.Civ.P. 60(b)(2) and (3). McClain argues that while the summary judgment motions were pending before the district court, SCNB notified several credit reporting agencies that McClain had failed to pay off her insurance premiums. She claims that she was damaged by the adverse credit report because she was not able to receive a loan in April 1995.

As the district court noted, the adverse credit report was an administrative error which was corrected immediately after McClain filed her motion. Wachovia National Bank, which had recently acquired SCNB, sent a written notice rescinding the earlier report to the three major credit reporting agencies the day after McClain filed her motion. Furthermore, once the correction was made, McClain's loan application was approved. Moreover, as the district court pointed out, McClain's pleadings do not include claims for defamation or impairment of credit. Her complaint speaks from the date it was filed. The district court denied her 60(b) motion without prejudice to assertion of a similar claim in another action.

## VI

We remand the case for the district court to dismiss SCNB's mandatory counterclaim with prejudice in accordance with the bank's representation to the district court. The dis-

trict court's summary judgment with respect to McClain's claims is affirmed.

*AFFIRMED.*