Defendants-appellants Donald Anzells and Euclid Steel Wire, Inc. (ESW) appeal from the trial court's order declaring judgment in favor of the plaintiffs-appellees Dean Lapp, the Estate of Alice Lapp, and third party defendant-appellee Cleveland Cold Heading, Inc. (CCH). During the litigation Dean A. Lapp, Executor of the Estate of Alice E. Lapp, deceased, was substituted as a party in place of Mrs. Lapp.
During the time period of concern in this litigation, Dean Lapp was the president of CCH and Anzells was the president and shareholder of ESW. ESW and CCH conducted a business relationship which began in 1976. After 1986 CCH began to accrue debt to ESW. In order that the business relationship might continue, on August 3, 1990, a note was signed by the appellees Dean Lapp and Alice Lapp, as officers of CCH and as individual guarantors, for the sum of $180,000. This note was secured by a mortgage on property owned by the Lapps. The note states:
COGNOVIT NOTE
$180,000.00 August 3, 1988
 For value received, the undersigned, CLEVELAND COLD HEADING, INC., promises to pay to EUCLID STEEL WIRE, INC. and DONALD J. ANZELLS, or order, the sum of One Hundred Eighty Thousand Dollars ($180,000.00) due August 3, 1990, with interest at the rate of fifteen (15%) per annum on the unpaid balance. DEAN A. LAPP and ALICE E. LAPP agree to guaranty payment in the event of default by CLEVELAND COLD HEADING, INC.
 Principal and interest to be payable at promissee's business or at any other place hereafter designated by the holder.
 In the event of foreclosure of the premises described above, the makers of this Note shall be responsible for payment of all reasonable attorney fees incurred by holder as a result of said action.
 This Note is secured by a mortgage from the guarantors to the payee upon premises known or designated as 11811 and 11889 Prospect Road, Strongsville, Ohio 44136.
* * *[1]
Due August 3, 1990.
The mortgage which secures this note states:
 Whereas the said DEAN A. LAPP and ALICE E. LAPP have executed and delivered to the said EUCLID STEEL WIRE, INC., A Cognovit Note of even date as Guarantors for the sum of One Hundred Eighty Thousand Dollars ($180,000.00), the terms of which are incorporated herein by reference.
* * *
 Now if the said DEAN A. LAPP and ALICE E. LAPP shall fully pay the said promissory note to the said EUCLID STEEL WIRE, INC., its successors heirs or assigns, together with the interest thereon at the time when and place where the same shall become due and payable, and shall pay all taxes and assessments on said real estate as hereinbefore provided at the maturity thereof, and shall keep and maintain such insurance and the policy as above mentioned, then these presents and the said promissory notes shall cease and be null and void.
Anzells testified in his deposition that the note was to cover outstanding invoices of approximately $173,000 to $175,000. The remaining $5,000 to $7,000 was for invoices representing the next shipment (Anzells Depo. T. 8). The note, drafted by Anzells' attorney, did not specify what debt the note represented (Anzells Depo. T. 8).
In his deposition, Mr. Anzells testified that as of September 30, 1996, he was owed approximately $581,000 by the appellees. However, the invoices memorializing this debt are dated January 1993 and forward. There are no past-due invoices for the years from 1987 to 1992. Mr. Anzells stated that when monies were received from the appellees, the computer automatically assigned the funds to the earliest invoices (Anzells Depo. T. 14). In his affidavit attached to his motion for summary judgment, Anzells acknowledges that payments made by Lapp/CCH were assigned to specific invoices. Periodically, CCH and ESW reconciled the accounting records. Payments were never designated as specifically applying to the note.
Mr. Lapp testified in his deposition that the note was paid off in 1990 and that the current debt dates back only to 1993 (Lapp T. Depo. 24, 41). Lapp also stated that it never occurred to him to ask that the note be canceled until he attempted to sell the property in 1996 (Lapp T. Depo. 25). Lapp further testified that when the first payments were made on the note, they were returned to Anzells/ESW with specific invoices. Later, Lapp/CCH began to make direct deposits into the bank for ESW. When the direct deposits were made, CCH would send or fax the bank receipt and a list of the invoices paid (Lapp T. Depo. 20-21).
In his affidavit Lapp testified that when steps were taken to sell the property, it was discovered that the mortgage deed had not been officially canceled. The appellants would not voluntarily cancel the mortgage deed and the failure to cancel the mortgage deed would prevent the clear transfer of the real property.
The trial court held that the cognovit note was paid in full by the appellees and that the appellees were entitled to cancellation of the mortgage deed securing the payment of the cognovit note. Summary judgment was granted for the appellees on count one of the complaint, the counterclaim, and on count one of the third-party complaint. The court denied summary judgment to the appellants. The appellees dismissed the claim for slander of title and the appellants dismissed their claim in the third-party complaint for the additional debt of $595,000.
The appellants set forth one assignment of error:
 THE TRIAL COURT ERRED, CONTRARY TO LAW, IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT 1 OF THE COMPLAINT, AND IN GRANTING APPELLEES MOTIONS FOR SUMMARY JUDGMENT ON COUNT 1 OF THE COMPLAINT, COUNTS ONE AND TWO OF THE COUNTERCLAIM AND COUNT ONE OF THE THIRD-PARTY COMPLAINT.
The appellants assert four arguments under this assignment of error. The appellants argue that the appellees' claims are barred by the equitable doctrine of laches; that parol evidence should be considered to show the intent of the parties at the time the cognovit note was entered into; that the note should be reformed because of a mutual mistake; and that there are genuine issues of fact.
This court reviews the lower court's grant of summary judgmentde novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court.Zaslov v. The May Dept. Stores Co. (Oct. 1, 1998), Cuyahoga App. No. 74030, unreported. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Turner v. Turner (1993), 67 Ohio St.3d 337, citing toTemple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, andHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See Celotex Corp.v. Catrett (1986), 477 U.S, 317, 323.
The resolution of this case turns on contract interpretation, the admission or exclusion of parol evidence, and the presence or absence of a mutual mistake. This court notes that, generally, there is a presumption that the intention of the parties to a contract resides in the language they chose to employ in the agreement. Shifrin v. Forest City Ent. (1992), 64 Ohio St.3d 635. Where the language in the contract is clear and unambiguous, the court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,246. A court will not read into a contract limiting language which was left out by the parties to the agreement because to do so would rewrite the contract. Id.
Where an ambiguity exists in a contract, the court may construe the language for it is a question of law. Logsdon v. Fifth ThirdBank of Toledo (1994), 100 Ohio App.3d 333. The court's duty is to construe the contract so as to give effect to the intention of the parties. Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth. (1997), 78 Ohio St.3d 353; AultmanHosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51. Further, in Ohio, parol evidence directed to the nature of the contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement which forms the basis of the action between the parties. Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512. Parol evidence is admissible, at least for some purposes, where a contract is ambiguous. Hildebrand v. Fogel (1851),20 Ohio 147, affirmed in Illinois Controls, supra.
Reformation is the modification of an instrument to express the actual intent of the parties. Gen. Tire, Inc. v. Mehlfeldt
(1997), 118 Ohio App.3d 109. It can be used to remedy a mutual mistake, but not a unilateral one. Mehlfeld citing to Bellish v.C.I.T. Corp. (1943), 142 Ohio St. 36. Ohio law regarding mutual mistake in the formation of a contract requires that the contract provision in question be contrary to the understanding of all of the contracting parties. Snedgar v. Midwestern Indemn. Co.
(1988), 44 Ohio App.3d 64.
Reformation of a contract based on mutual mistake is allowed only where there is clear proof that the parties made the same mistake and that both parties understood the contract as the party seeking reformation alleges. Id. at 69. The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence. Mehlfeldt, supra, at 115; ClevelandIndustrial Square, Inc. v. T.H.E.M. of Ohio, Inc. (Nov. 3, 1994), Cuyahoga App. No. 66381, unreported.
The threshold issue controlling this court's determination of the case sub judice is whether the cognovit note and the mortgage deed are ambiguous. After a careful review of the record, this court finds no ambiguity. Even a cursory examination of the note and mortgage deed reveals that the appellants failed to place any language in the instruments specifying the debt to be mortgaged. There is certainly no indication in the note or deed that future debts are to be secured. In contrast, the language in the deed does specify that when the note is paid, the deed and the note shall become null and void.
The absence of a statement regarding the underlying debt does not necessarily create an ambiguity, Alexander, supra. Nor is an ambiguity created because the mortgage deed does not specify whether the mortgage should be considered as an open-ended mortgage or as a closed mortgage. This court must note that there is a specific type of mortgage which would have accomplished the now stated designs of the appellants, namely an open-ended mortgage. An open-ended mortgage is defined as: "a mortgage permitting the mortgagor to borrow additional money under the same mortgage, with certain conditions, usually as to the assets of the mortgage. Blacks Law Dictionary (5th Ed. Rev. 1979) 912.
If the appellants desired the note and mortgage deed to secure all future debt, an open-ended mortgage could have been presented to the appellees. In other words, the appellants failed to avail themselves of the specific type of mortgage designed to achieve the results to which the appellants now say they are entitled. This court must conclude that had the appellants wished an open-ended mortgage, they could have so stated. This court may not read into the documents clauses not utilized by the parties. Since the instruments are not ambiguous, it is unnecessary to consider parol evidence.
The appellants also assert that they are entitled to relief based on the doctrine of mutual mistake and seek a reformation of the contract. The appellants also argue that there was never a meeting of the minds and thus no contract at all. Neither argument is well taken.
At the very least, it seems clear that the parties intended that Lapps/CCH would secure debt to Anzells/ESW with a note and mortgage. The parties expressed their intent in two written instruments, the cognovit note and the mortgage deed. With such evidence of intent, this court finds that there was a meeting of the minds. Additionally, there is no evidence of mutual mistake. While it is conceivable that the appellants may have intended an open-ended mortgage, and simply failed to ensure that proper language was placed in the documents, this unilateral mistake does not require this court to rewrite the contract.
Turning next to the appellants' affirmative defense of laches, this court concludes that the doctrine of laches does not apply. The elements of laches are: 1) unreasonable delay or lapse of time in asserting a right; 2) absence of an excuse for the delay; 3) knowledge, actual or constructive, of the injury or wrong; and, 4) prejudice to the other party. State ex rel. Ascani v.Stark Cty. Bd. of Elections (1988), 83 Ohio St.3d 490; State exrel. Mallory v. Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235,244. To establish the affirmative defense of laches, material prejudice must be proven; unexplained or unreasonable delay is not enough. State ex rel. Roadway Express, Inc. v.Indus. Com'n of Ohio (1998), 82 Ohio St.3d 510. Material prejudice is not just any inconvenience or expense suffered by the party asserting laches, rather, prejudice is ordinarily represented by the inability to defend due to the passage of time. Id. at 514. Refusal to apply the doctrine of laches is within the discretion of the trial court. State ex rel. Child v.Sanders (April 2, 1998), Cuyahoga App. No. 72428, unreported.
Here, the appellants have failed to present any evidence of material prejudice. The note and mortgage secure only debt incurred prior to and directly after the signing of the contract in August 1988, not future debt from 1993 forward, thus it would make no difference to the appellants when the appellees sought to have the note deemed satisfied and the mortgage released be it in 1990, 1996 or 2000.
The trial court did not err in granting summary judgment in favor of the appellees.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
LEO M. SPELLACY, P.J., and KENNETH A. ROCCO, J., CONCUR
 ___________________________________ JAMES D. SWEENEY JUDGE
[1] Cognovit provisions omitted.