314

Mussivand, Appellee, *v.* David, Appellant, et al.

[Cite as Mussivand *v.* David (1989), 45 Ohio St. 3d 314.]

(No. 88-1390—Submitted May 31, 1989—Decided September 20, 1989.)

*Scanlon & Gearinger Co., L.P.A., Paul F. Meyerhoefer* and *Robert A. Royer,* for appellee.

*Mark B. Cohn* and *Joseph E. Viny,* for appellant.

ALICE ROBIE RESNICK, J. This case comes to us on a dismissal of a complaint for failure to state a cause of action. The complaint basically states that appellee contracted a venereal disease due to the acts of the appellant. Therefore we do not know whether the venereal disease was gonorrhea, syphilis, genital herpes, venereal warts or some other sexually transmitted disease. Hence a brief discussion of sexually transmitted diseases is necessary.

A "venereal disease" is defined as "a contagious disease, most commonly acquired in sexual intercourse or other genital contact; the venereal diseases include syphilis, gonorrhea, chancroid,

granuloma inguinale, lymphogranuloma venereum, genital herpesvirus infection; and balanitis gangraenosa." Dorland's Illustrated Medical Dictionary (26 Ed. 1985) 394. Sexually transmitted diseases "such as non specific urethritis, trichmoniasis, chlamydial infections, genital candidiasis, genital and anorectal herpes and warts * * * probably are more prevalent than the 5 historically defined venereal diseases — syphilis, gonorrhea, chancroid, lymphogranuloma venereum, and granuloma inguinale. However, because the former group is not consistently reported, incidence figures are not available. * * *" The Merck Manual of Diagnosis and Therapy (15 Ed. 1987) 232.[2]

Diagnosis and treatment vary with the venereal disease involved. Gonorrhea, for example, generally spreads by sexual contact, as does syphilis. Both of these venereal diseases generally may be treated with medication, such as penicillin.[3] Genital warts (condylomata acuminata) also are usually transmitted sexually. However, with this disease, no treatment is completely satisfactory. Over the past ten years, genital wart infections have increased "at twice the rate of genital herpes and are medically important, especially for future cancers." Merck Manual, supra, at 250.[4]

Genital herpes or herpes simplex virus type 2 (HSV 2) also is spread through sexual intercourse.[5] There are two types of herpes simplex virus: herpes simplex virus type 1, which is the causative agent of oral infections, or conditions "above the waist"; and herpes simplex virus type 2, which is the causative agent of genital infections, or symptoms "below the waist."[6] As with genital warts the number of persons infected with herpes simplex virus type 2 is growing

---

[2] The incidence of sexually transmitted disease "has risen despite advances in diagnosis and treatment that rapidly render patients noninfectious and cure the majority. Factors responsible for this paradox include changes in sexual behavior, e.g., widespread use of contraceptive pills and devices; more varied sexual practices, including orogenital and anorectal contact; emergence of strains of organisms less sensitive to antibiotics; symptomless carriers of infecting agents; a highly mobile population; a high level of sexual activity in some homosexual men; ignorance of the facts by physicians and the public; and reticence of patients in seeking treatment." Merck Manual, supra, at 232.

[3] See Merck Manual, supra, at 232-235 and 236-243.

[4] "The treatment of choice of most forms of condyloma acuminatum has been podophyllin for over four decades, but failure, recurrence, and reinfection rates are unacceptably high." Camisa, Condyloma Acuminatum and Other Human Papillomavirus-Induced Diseases, in Sexually Transmitted Diseases[:] A Clinical Syndrome Approach (Spagna & Prior Ed. 1985) 309, 327.

[5] Adam, Herpes Simplex Virus Infections, in Human Herpesvirus Infections: Clinical Aspects (Glaser & Tamar Gotlieb-Stematsky Ed. 1982) 1, 23. The highest incidence of HSV 2 is seen in the second and third decades of life, when sexual activity is at its highest. The rate of genital infection parallels sexual promiscuity. Id.

[6] See Adam, supra, at 2; see, also, McKendrick & Sutherland, An Introduction to Herpes Infections (1983) 33.

at an alarming rate.[7] There is no known cure for this disease.[8]

It long has been held that one who has a contagious disease must take the necessary steps to prevent the spread of the disease. This standard of care has been imposed by the courts in cases concerning the spread of communicable diseases such as tuberculosis, see *Earle* v. *Kuklo* (1953), 26 N.J. Super. 471, 98 A. 2d 107; smallpox, see *Jones* v. *Stanko* (1928), 118 Ohio St. 147, 160 N.E. 456; scarlet fever, see *Skillings.* v. *Allen* (1919), 143 Minn. 323, 173 N.W. 663; and valley fever, see *Crim* v. *International Harvester Co.* (C.A. 5, 1981), 646 F. 2d 161. " 'The general principle is well established that a person who negligently exposes another to an infectious or contagious disease, which such other thereby contracts, is liable in damages therefor. * * * The degree of diligence required to prevent exposing another to a contagious or infectious disease depends upon the character of the disease and the danger of communicating it to others. In order to show negligence in exposing another to a contagious or infectious disease, it must be proved that the defendant knew of the presence of the disease.' " *Earle, supra,* at 475, 98 A. 2d at 109, quoting from 25 American Jurisprudence (1940) 318, Health, Section 45.

A similar standard of care exists for preventing the spread of a venereal disease. In *Duke* v. *Housen* (Wyo. 1979), 589 P. 2d 334, the plaintiff alleged that her former paramour was grossly negligent when he infected her with gonorrhea. Although her action was barred by the statute of limitations, the court held that "[o]ne who negligently exposes another to an infectious or contagious disease, which such other person thereby contracts, can be held liable in damages for his actions. * * *" (Citations omitted.) *Id.* at 340. See, also, *Crowell* v. *Crowell* (1920), 180 N.C. 516, 105 S.E. 206 (plaintiff alleged defendant wrongfully and recklessly infected her with a venereal disease), and *De Vall* v. *Strunk* (Tex. Civ. App. 1936), 96 S.W. 2d 245 (plaintiff alleged defendant infected her with crab lice).

Recently several jurisdictions have allowed tort actions for negligent, fraudulent or intentional transmission of genital herpes where the person infected with genital herpes fails to disclose to his or her sexual partner that he or she is infected with such a disease. See *B.N.* v. *K.K.* (1988), 312 Md. 135, 538 A. 2d 1175; *Maharam* v. *Maharam* (1986), 123 App. Div. 2d 165, 510 N.Y. Supp. 2d 104; *S.A.V.* v. *K.G.V.* (Mo. 1986), 708 S.W. 2d 651; *Long* v. *Adams* (1985), 175 Ga. App. 538, 333 S.E. 2d 852, certiorari denied (Ga. 1985); *Kathleen K.* v. *Robert B.*

---

[7] One survey indicates that in the period from 1976 to 1980, 16.4 percent of the U.S. population fifteen to seventy-four years of age, or twenty-five million persons, were infected with HSV 2. Johnson, Nahmias et al., A Seroepidemiologic Survey of the Prevalence of Herpes Simplex Virus Type 2 Infection in the United States (July 6, 1989), 321 The New England Journal of Medicine 7. Determining the exact number of persons infected with HSV 2, however, is difficult, primarily because symptoms or signs occur in less than forty percent of the infections detected serologically. Johnson, *id.* at 10. One survey of two hundred fifty-two women showed that 46.8 percent were asymptomatic. See Juretic, Herpetic Infections of Man (1980) 51. See, also, Nahmias, Dowdle & Schinazi, The Human Herpesviruses: An Interdisciplinary Perspective (1981) 7.

[8] "* * * [E]ven early treatment of primary infections does not abort latent infections or prevent recurrences." Merck Manual, *supra,* at 249.

(1984), 150 Cal. App. 3d 992, 198 Cal. Rptr. 273; *Berner* v. *Caldwell* (Ala. 1989), 543 So. 2d 686. Thus, courts have placed upon persons who have a venereal disease such as genital herpes or gonorrhea the duty to protect others who might be in danger of being infected by such a disease. In other words, people with a venereal disease have a duty to use reasonable care to avoid infecting others with whom they engage in sexual conduct. The court in *R.A.P.* v. *B.J.P.* (Minn. App. 1988), 428 N.W. 2d 103, 107-108, in reference to genital herpes, stated that, "* * * [a] person has a duty to exercise reasonable care to avoid injury to others whenever he/she is 'placed in such a position with regard to another that it is obvious that if he does not use due care in his own conduct he will cause injury to that person.' *Skillings,* 143 Minn. at 325, 173 N.W. at 663-64. People who know that they have genital herpes are in exactly such a position with respect to their potential sex partners. A reasonable person should know that if he/she has a contagious, sexually transmissible disease like genital herpes, the disease is likely to be communicated through sexual contact. Thus people suffering from genital herpes generally have a duty either to avoid sexual contact with uninfected persons or, at least to warn potential sex partners that they have herpes before sexual contact occurs."

Our research reveals, however, that the above-cited cases differ from the cause before us in one very important aspect: that is, appellee herein alleges that appellant owed him a duty even though appellee was not appellant's sexual partner and had no direct sexual contact with appellant.

The issue which we must decide in this case, therefore, is what duty, if any, does a person infected with a venereal disease owe to the spouse of his paramour. Determining whether a duty exists is crucial since "[a] person's failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence unless such person owed to someone injured by such failure a duty to exercise such ordinary care." *United States Fire Ins. Co.* v. *Paramount Fur Service, Inc.* (1959), 168 Ohio St. 431, 7 O.O. 2d 267, 156 N.E. 2d 121, paragraph three of the syllabus.

To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom. *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732. The existence of a duty in a negligence action is a question of law for the court to determine. See *Railroad Co.* v. *Harvey* (1907), 77 Ohio St. 235, 240, 83 N.E. 66, 68. There is no formula for ascertaining whether a duty exists. Duty "* * * is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf Revisited* (1953), 52 Mich. L. Rev. 1, 15). * * *" *Weirum* v. *RKO General, Inc.* (1975), 15 Cal. 3d 40, 46, 123 Cal. Rptr. 468, 471, 539 P. 2d 36, 39.

The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances. See *Gedeon* v. *East Ohio*

*Gas Co.* (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 925. A person is to exercise that care necessary to avoid injury to others. 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19.

A person who has a venereal disease does not have the duty to disclose his condition to everyone. As has been stated, "[i]t should be made clear that this court is not stating here that herpes victims have a specific duty to warn any person of their condition; however, they, like all citizens, are to be guided by those considerations which ordinarily regulate the conduct of human affairs, and they may be sued in this state for negligence in the omission to do something which a reasonable person would do. * * *" *Long* v. *Adams, supra,* at 540, 333 S.E. 2d at 855.

We find the reasoning of these other jurisdictions persuasive and accordingly hold that a person who knows, or should know, that he or she is infected with a venereal disease has the duty to abstain from sexual conduct or, at the minimum, to warn those persons with whom he or she expects to have sexual relations of his or her condition.

There is a strong public policy behind imposition of this duty. In general, we are reminded that "* * * [t]he health of the people is an economic asset. The law recognizes its preservation as a matter of importance to the state. To the individual nothing is more valuable than health. The laws of this state have been framed to protect the people, collectively and individually, from the spread of communicable diseases. * * *" *Skillings,*

*supra,* at 325-326, 173 N.W. at 664. More specifically, we recognize that venereal diseases are often serious, and, in some instances, there is no known cure for them. Transmission of a venereal disease is generally through sexual contact. The likelihood that one will contract a venereal disease from someone infected with such a disease is often high.[9]

Furthermore, there is statutory support for this duty. R.C. 3701.81 (A) states: "No person, knowingly or having reasonable cause to believe that he is suffering from a dangerous, contagious disease, shall knowingly fail to take reasonable measures to prevent exposing himself to other persons, except when seeking medical aid."

Appellee urges us to find that violation of R.C. 3701.81(A) would be negligence *per se.* Whoever violates R.C. 3701.81(A) is guilty of a misdemeanor of the second degree. Where a statute, such as R.C. 3701.81, does not expressly provide for civil liability, however, the question of whether violation of the statute constitutes negligence *per se* depends on the enactment itself. 70 Ohio Jurisprudence 3d (1986) 124, Negligence, Section 53. "Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be deter-

---

[9] For example, one study shows that "[t]he risk of genital * * * [herpes] infection after contact with a diseased male is about 60-80% * * *; the risk from an infected female cannot be estimated with reasonable approximation because of the different clinical manifestations of the disease." *Adam, supra,* at 23.

mined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case." *Eisenhuth* v. *Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E. 2d 440, paragraph three of the syllabus. Where the duty is defined "only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence *per se* has no application." *Swoboda* v. *Brown* (1935), 129 Ohio St. 512, 523, 2 O.O. 516, 521, 196 N.E. 274, 279.

Thus in *Chambers* v. *McFerren* (1959), 168 Ohio St. 398, 7 O.O. 2d 247, 155 N.E. 2d 917, we found that a violation of R.C. 4511.30, which prohibits driving of any vehicle or trackless trolley on the left side of the roadway under certain specific conditions, constituted negligence *per se.* We also found in *Clinger* v. *Duncan* (1957), 166 Ohio St. 216, 2 O.O. 2d 31, 141 N.E. 2d 156, that a municipal ordinance which provided that the motor or engine of a motor vehicle should not be allowed to run while such vehicle is standing on the street, unless a competent person is in charge of and in and upon such vehicle, was a valid enactment containing a specific requirement for the safety of others. Thus, we stated that violation of this ordinance was negligence as a matter of law. However, in *Westervelt* v. *Rooker* (1983), 4 Ohio St. 3d 146, 148, 4 OBR 390, 391, 447 N.E. 2d 1307, 1309, we found that negligence *per se* was not applicable to R.C. 4511.28 in that it did not "allude to the commission or omission of any specific act. On the contrary, under the provisions of R.C. 4511.28, the driver of a vehicle may overtake and pass upon the right of another vehicle when the vehicle overtaken is making or about to make a left turn, only under conditions permitting such movement in safety. * * *" We found that permission to pass, being a subjective matter, "necessarily depends upon an evaluation of multiple facts and circumstances" and was for jury determination from all of the attending facts and circumstances as shown by the evidence. *Id.* at 148, 4 OBR at 391-392, 447 N.E. 2d at 1309. See, also, *Batesole* v. *Stratford* (C.A. 6, 1974), 505 F. 2d 804.

R.C. 3701.81(A) states that a person who knows or has reasonable cause to believe he is suffering from a dangerous, contagious disease shall not "knowingly fail to take *reasonable measures* to prevent exposing himself to other persons." (Emphasis added.) This statute does not describe a specific act but instead states a rule of conduct. What measures would be reasonable will depend, in part, on the type of disease and how it is transmitted from an infected person. Hence we can not say that violation of this statute constitutes negligence *per se.* Instead it sets forth a standard of due care which should be exercised by a reasonably prudent person under the circumstances.[10]

Appellant argues, however, that while he may have had a duty to appellee's wife to disclose his condition, this duty does not extend to appellee. The existence of a duty will depend on

---

[10] Compare R.C. 3701.81(A) with N.Y. Public Health Law, Section 2307: "Any person who, knowing himself or herself to be infected with an infectious venereal disease, has sexual intercourse with another shall be guilty of a misdemeanor." The court in *Maharam, supra,* at 171, 510 N.Y. Supp. 2d at 107, found that conduct allegedly violating this section may be negligence *per se.*

the foreseeability of the injury to appellee. See *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 180, 472 N.E. 2d 707, 710. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Freeman* v. *United States* (C.A. 6, 1975), 509 F. 2d 626; *Thompson* v. *Ohio Fuel Gas Co.* (1967), 9 Ohio St. 2d 116 [38 O.O. 2d 294]; *Mudrich* v. *Standard Oil Co.* (1950), 153 Ohio St. 31 [41 O.O. 117]. * * *" *Menifee, supra.* Thus whether appellant owed appellee a duty turns on whether a reasonably prudent person would have anticipated that appellee would be injured by way of appellant's alleged negligence. In this case appellant, allegedly infected with a venereal disease, engaged in sexual relations with a married woman. A reasonably prudent person would anticipate that a wife and husband will engage in sexual relations. In addition, Dr. David is a medical doctor who, more than most people, should be aware of the method of transmitting a venereal disease, its likelihood of spreading through sexual contact, and its potentially devastating effect. If one negligently exposes a married person to a sexually transmissible disease without informing that person of his exposure, it is reasonable to anticipate that the disease may be transmitted to the married person's spouse. Hence liability to a third party for failure to disclose to the original sexual partner turns on whether, under all the circumstances, injury to the third-party spouse was foreseeable.

Appellant argues that possibly appellee's wife, not he, was the cause of appellee's injuries. "Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who is guilty of the negligence. * * *" (Citations omitted.) *Cascone* v. *Herb Kay Co.* (1983), 6 Ohio St. 3d 155, 6 OBR 209, 451 N.E. 2d 815, paragraph one of the syllabus.

In *Jeffers* v. *Olexo* (1989), 43 Ohio St. 3d 140, 144, 539 N.E. 2d 614, 618, we equated foreseeability with proximate cause. This is misleading since they are not equatable. Rather, in order to establish proximate cause, foreseeability must be found. In determining whether an intervening cause "breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone. *Neff Lumber Co.* v. *First National Bank of St. Clairsville, Admr.,* 122 Ohio St. 302, 309, 171 N.E. 327." *Mudrich* v. *Standard Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E. 2d 859, 863. Thus we do not equate foreseeability with proximate cause. Instead, if appellant knew his paramour was married, then it can be said that it was reasonably foreseeable that she would engage in sexual intercourse with her husband. In addition, if appellant did not inform her of the fact that he had a venereal disease, she could not be an intervening cause and,

as such, appellant's liability to appellee would not be terminated. Appellant's negligence would then be the proximate cause of appellee's injury.

We do not, however, mean to say that appellant, subsequent to his affair with appellee's wife, will be liable to any and all persons with whom she may have sexual contact. A spouse, however, is a foreseeable sexual partner. Furthermore, the liability of a person with a sexually transmissible disease to a third person, such as a spouse, would be extinguished as soon as the paramour spouse knew or should have known that he or she was exposed to or had contracted a venereal disease. She or he then would become a "conscious and responsible agency which could or should have eliminated the hazard." *Cascone, supra.* For example, if appellant told appellee's wife he had a venereal disease or if she noticed symptoms of the disease on herself, she then would have the duty to abstain from sexual relations or warn her sexual partner. Whether appellee's wife knew, or should have known, of her exposure to a venereal disease is a question of fact to be decided by the trier of fact.

A motion to dismiss for failure to state a claim upon which relief can be granted will be sustained only where "* * * it appears 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.'" *Border City S. & L. Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65, 66, 15 OBR 159, 160, 472 N.E. 2d 350, 351. For the foregoing reasons we cannot say that appellee could not prove any set of facts entitling him to recovery in negligence from appellant. Accordingly, the trial court erred in granting appellant's motion to dismiss and we affirm the court of appeals' reversal as to the negligence cause of action.

Appellant also argues that the appellate court was incorrect in reversing the trial court's dismissal of appellee's fraud cause of action. The elements of fraud are: "* * * (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 23 OBR 200, 491 N.E. 2d 1101, paragraph two of the syllabus; *Cohen* v. *Lamko, Inc.* (1984), 10 Ohio St. 3d 167, 10 OBR 500, 462 N.E. 2d 407." *Gaines* v. *Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54, 55, 514 N.E. 2d 709, 712. All elements must exist to show fraud. See *Schwartz* v. *Capital S. & L. Co.* (1978), 56 Ohio App. 2d 83, 86, 10 O.O. 3d 117, 119, 381 N.E. 2d 957, 959.

One of the elements which must be shown is that the person to whom the misrepresentation was made justifiably relied on the statement. In determining whether there was justifiable reliance, one looks to the relationship between the parties. This court in an early decision on whether one party justifiably relied on another's statements focused on the fact that "[t]he personal relation of the parties was not one calculated to beget confidence or reliance, but the contrary. Rice was acting avowedly as the agent of a party whose interests were averse to Reed, and common intelligence would have caused Reed to know he was not acting as his friend or advising his interests. * * * In this Reed could scarcely be deceived." *Aetna Ins. Co.* v. *Reed* (1877), 33 Ohio St. 283, 291.

A similar situation exists in the

case before us. The very fact that appellee allegedly asked appellant if he had an affair with his wife indicates that their relationship was not based on friendship or trust. Appellant's alleged answer should be viewed in the context in which it was given: a confrontation between a husband who suspects his wife of infidelity and the man with whom the husband thinks his wife may have had an affair. Accordingly, appellee could not have justifiably relied on appellant's answer and the trial court correctly dismissed appellee's second cause of action.

Appellant also contends that appellee's complaint is barred by R.C. 2305.29, the so-called "anti-heart balm" statute. Appellee's claim, however, clearly is not based on any amatory cause of action, such as breach of promise to marry, alienation of affections, criminal conversation, or seduction. On the contrary, appellee alleges that he has been seriously injured and suffers from an incurable disease as a result of appellant's conduct. The fact that appellee is married to appellant's former paramour does not turn this into an amatory action. Accordingly, appellee's complaint is not barred by R.C. 2305.29.[11]

For the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.

---

[11] R.C. 2305.29 states in pertinent part: "No person shall be liable in civil damages for any breach of a promise to marry, alienation of affections, or criminal conversation, and no person shall be liable in civil damages for seduction of any person eighteen years of age or older, who is not incompetent * * *."

This case does not involve a breach of a promise to marry. Furthermore, appellee does not expressly state that because of appellant's action, he suffered from alienation of his wife's affections; nor does he allege criminal conversation or seduction. Only if his cause of action is disguised as one for alienation of affections, criminal conversation, or seduction, will R.C. 2305.29 apply. "We believe the General Assembly intended to eliminate these common-law actions regardless of the title they are given or the severity of the alleged misconduct." Cf. *Strock* v. *Pressnell* (1988), 38 Ohio St. 3d 207, 215, 527 N.E. 2d 1235, 1242.

Before amatory actions were barred by R.C. 2305.29, the elements necessary to prove alienation of affections were that the "defendant wrongfully, maliciously and intentionally enticed, induced, persuaded and caused plaintiff's * * * [spouse] to lose * * * affections for * * * [plaintiff], and that defendant intended to bring about the alienation." *Trainor* v. *Deters* (1969), 22 Ohio App. 2d 135, 137, 51 O.O. 2d 258, 259, 259 N.E. 2d 131, 133. To show criminal conversation, adultery was the key element. "The fundamental right violated by criminal conversation is that of exclusive sexual intercourse, which the law grants as a necessary consequence of the marriage relation * * *." *Baltrunas* v. *Baubles* (1926), 23 Ohio App. 104, 154 N.E. 747. An action for seduction gave to the husband the right to recover damages for the seduction of his wife. 47 Ohio Jurisprudence 3d (1983) 418, Family Law, Section 884.

In *Strock, supra,* we determined that a complaint, although ostensibly alleging intentional infliction of emotional distress, was in effect an action for criminal conversation and alienation of affections. There, the husband stated that his marriage was harmed, resulting in divorce. Repeated throughout the complaint were references to an alleged affair between his wife and defendant. *Id.* at 215, 527 N.E. 2d at 1242. That is quite different from what appellee alleges here, namely, contraction of an incurable disease as a result of appellant's negligence.