WALKER et al., Appellants,

v.

EAST END COMMUNITY HEALTH CENTER, INC. et al., Appellees.

[Cite as *Walker v. E. End Community Health Ctr., Inc.* (1998), 131 Ohio App.3d 322.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–970344, C–970350.

Decided May 1, 1998.

*Bernard Lieberman,* for appellant.

*Droder & Miller Co., L.P.A.,* and *Bradley A. Powell,* for appellee H. Randall Garland, Director of Cincinnati Health Network.

*Rendigs, Fry, Kiely & Dennis, Wilson G. Weisenfelder, Jr.,* and *Jeffrey S. Routh,* for all other named appellees.

---

MARIANNA BROWN BETTMAN, Judge.

## PARTIES

Plaintiff-appellant Opal Walker, individually and as the administrator of the estate of her son Arliss Walker,[1] filed a complaint against defendants-appellees, East End Community Health Center, Inc. ("Health Center"); James Black, Executive Director of the Health Center; Eunice Thompson, Administrator of the Health Center; the Board of Directors of the Health Center, individually and in their capacity as members of the board; H. Randall Garland, Director of the Cincinnati Health Network; Bonita King, medical assistant at the Health Center; Merrill Bryant, receptionist at the Health Center; Deborah Moss Berlon, R.N., a nurse at the Health Center; Carol Roark, M.D., a pediatrician employed by the Health Center for a pediatric clinic; Cheryl Meadows, Director of the City of Cincinnati Human Services Division; the city of Cincinnati; and John and Jane Does.[2]

## FACTS

The claims in this lawsuit all arose out of an incident that took place on the afternoon of December 13, 1991. Arliss Walker, a twenty-six-year-old mildly retarded individual, and his mother, Opal Walker, boarded a bus in the East End and headed out to the Western Hills Shopping Plaza. According to his mother, although her son appeared normal, after riding the bus a few blocks, Arliss told her that he needed to go to the health clinic in the East End. The two got off the bus and walked to the Health Center. Arliss vomited outside the Health Center. When the two entered the Health Center, Arliss pounded on the receptionist's desk and demanded to see a doctor because he was sick. Unbeknownst to Arliss and his mother, that day was reserved for the pediatrics clinic, and the only doctor who would have been available was Dr. Carol Roark, a pediatrician.

What happened next is sharply disputed. According to receptionist Merrill Bryant, medical assistant Bonita King, and nurse Deborah Moss Berlon, the only thing Arliss told anyone when asked his problem was that he was "all stuffed up."

---

1. Arliss's three sisters were also named as plaintiffs in the complaint. The trial court granted the defendants' motion to dismiss the sisters as plaintiffs. This decision is not challenged on appeal.

2. These defendants were never identified and thus are not partiés to this appeal.

All three additionally testified that his skin coloring was normal, that he was not short of breath as evidenced by his belligerent shouting, and that he did not appear to be in distress. It is undisputed that no one at the Health Center examined Arliss.

After hearing his complaint and observing his physical condition, but without examining him, Nurse Berlon told Arliss that there was no doctor available at that time to care for adult patients. She testified that she offered to provide Arliss a cab with fare vouchers to take him to a hospital emergency room or to another community health center.

Walker gave several depositions in this case. She also gave a statement to Frank Sefton, the city of Cincinnati investigator charged with investigating this matter. Although not consistent on this point, Walker did testify that she and/or Arliss told the staff at the Health Center that Arliss suffered from "shoulder hurts and chest pain" while at the clinic, and that Nurse Berlon offered to call a cab for transportation, but that she did not offer vouchers to pay for it. Walker testified additionally that she told Sefton this when he interviewed her several days after the incident. Sefton's report confirms this in part.

Upset at not being able to see a doctor, Arliss and his mother left the Health Center and began walking home. According to Walker, Arliss appeared normal and was not having any difficulty walking or breathing. When they reached Bill Russell's grocery store two blocks away, they asked Russell for a ride home. Arliss still seemed to be fine. About half an hour after the Walkers got home, Arliss collapsed and died of a heart attack.

As a result of Arliss's death, Walker filed a complaint against all of the defendants.

## CLAIMS FOR RELIEF

The complaint in this case includes nine claims. The first is a claim under Section 1983, Title 42, U.S.Code naming as defendants the Health Center and its administrators, Thompson and Black; the Board of Directors of the Health Center; and the city of Cincinnati. The basis of this claim is that because of the defendants' failure to supervise and adequately monitor the Health Center's personnel, Arliss was denied his right to live.

The second claim alleges that the Health Center, its administrators, medical staff, and other personnel knew or should have known of Arliss's terminal condition and that their indifference towards him violated his due process rights under the United States Constitution.

The third claim is a wrongful-death claim against all of the defendants. The fourth claim is a personal-injury claim against all defendants for the pain and

suffering of Arliss before his death and the medical expenses incurred as a result of his heart attack. The fifth claim is brought against all of the defendants for the emotional distress caused to Opal Walker due to the circumstances of her son's death. The sixth claim is for negligent hiring, training, and supervision of the employees of the Health Center. The city is allegedly responsible for the acts of the Health Center employees because it provides funding to the Health Center and the Health Center holds itself out as a city agency.

The seventh claim for relief asserts negligence *per se* against the Health Center, its directors and administrators, and the city for failure to operate the Health Center in a safe manner.

The eighth claim for relief is for breach of contract against the Health Center, its administrators and directors, and the city. Walker alleges in this claim that the negligence and willful misconduct of the employees at the Health Center breached a written or oral contract Arliss had with the Health Center based upon his years of treatment as a patient at the center.

In the final claim, captioned "misrepresentation or deceit," Walker alleges that King, Bryant, and Berlon either purposely or carelessly represented to Arliss that there was no doctor on duty that afternoon or no physician available to examine him as an emergency patient, and that this misrepresentation deprived Arliss of medical care.

## DISPOSITION OF CLAIMS

On March 27, 1995, the trial court granted a motion to dismiss Randall Garland as an individually named defendant in this case. On the same date, the court granted summary judgment to Garland in his capacity as director of the Cincinnati Health Network. Walker appeals from this judgment in the appeal numbered C–970350.[3]

On October 2, 1996, a magistrate recommended that summary judgment be granted to all remaining defendants on all other claims. Over Walker's objections, the magistrate's decision was affirmed by the trial court on March 26, 1997. Walker appeals from this judgment in the appeal numbered C–970344.[4]

## APPEAL NUMBER C–970350

In a sole assignment of error, Walker argues that the trial court erred in granting summary judgment in favor of Randall Garland. We disagree.

---

3. There was no Civ.R. 54(B) certification on this judgment. Thus, the appeal was timely filed at the conclusion of the entire case.

4. These cases have been consolidated on appeal.

█ The Cincinnati Health Network is a nonprofit corporation that obtains government funds in order to subsidize health care for people who do not have medical insurance or cannot afford to pay medical bills. These funds are distributed to health centers for health expenses. The network undertakes audits to evaluate whether the participating members meet federal grant-program expectations. Although the East End Health Center did not even join the network until January 1992, after Arliss's death, the Network did undertake a voluntary audit before that of the clinic's compliance with federal grant-qualifying guidelines.

We in no way agree with Walker that simply because the Health Network undertook a voluntary audit of compliance with federal grant-qualifying guidelines, the network assumed a duty of identifying deficiencies in patient care or of evaluating the competency of the medical services that were delivered. In the absence of any duty, there is no basis for any claim against Garland personally or as director. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265.

The assignment of error is overruled and the judgment of the trial court in the appeal numbered C–970350 is affirmed.

### APPEAL NUMBER C–970344

In this appeal, Walker challenges the entry of summary judgment on behalf of the rest of the defendants in this case.

█ Before we analyze Walker's two assignments of error in this appeal, two observations are in order. First, although Walker filed a complaint alleging nine claims for relief, summarized above, the gravamen of this entire lawsuit is that the defendants' failure to provide Arliss proper medical care caused his death. Under these circumstances, the trial court correctly considered this to be a medical malpractice wrongful-death case. *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 4 OBR 220, 446 N.E.2d 832.

Second, both the second assignment of error [5] and all of the issues raised under both assignments of error raise spurious hypertechnical and procedural matters that we summarily overrule. Despite this, we sustain the first assignment of error in part, which challenges the grant of summary judgment, for reasons we will set forth with the simplicity we believe warranted by the evidence properly before the trial court.

---

5. Walker's second assignment of error states: "The trial court erred to the prejudice of plaintiff-appellants in overruling their objections to affidavits and depositions filed by defendant-appellees."

■ The magistrate expressly found that there was a factual dispute in this case as to what Arliss and/or his mother told the employees of the clinic. The record clearly supports this finding. The receptionist, the medical assistant, and the registered nurse who were at the clinic all denied that Arliss told them anything that would have even hinted at a cardiac problem. Walker, however, says at least twice that she and/or Arliss told them that Arliss had "shoulder hurts and chest pains." In his deposition, Sefton confirmed that Walker told him this. While the defendants may or may not be justified in complaining that Walker's testimony was coached, inconsistent, changed, or not believable, she said enough to create a genuine issue of material fact, especially when it is undisputed that no one examined Arliss.

The magistrate went on, however, to recommend that summary judgment be granted, stating that because the Health Center was not capable of providing emergency care, its duty was limited to calling 911. The trial court adopted this reasoning. It is erroneous. Factually, there is no evidence that the employees at the Health Center offered to call 911. Additionally, this issue cannot be decided as a matter of law on this record.

■ The extent of a duty in tort depends on the circumstances. *Mussivand,* 45 Ohio St.3d at 318, 544 N.E.2d at 270. The duty of the Health Center to Arliss in this case was correctly described by two witnesses, one for the plaintiff and one for the defendants. The plaintiff's expert witness, cardiologist Dr. Sidney Cohen, gave the following opinion in his deposition:

"[G]iven or assuming the facts as presented by the plaintiff, that the plaintiff complained of chest pain and shortness of breath and had an episode of nausea and vomiting on presentation to the health-care clinic, [then] the possibility of a myocardial infarction or a heart attack, if you will, in plain language, was there[,] and [therefore,] the patient should have either received emergency medical care at the facility or an emergency medical system should have been alerted to provide early care for the patient until he could be brought to an emergency room."

Defendant Nurse Berlon defined the duty in almost the same way. She testified that if someone came into the clinic complaining of chest pain and shoulder pain, she would take vital signs and probably call 911 right away because the Health Center was not equipped to handle this type of emergency.

Thus, in this case, whether the Health Center fulfilled its duty to Arliss depends on a jury's assessment of what the personnel at the Health Center were told. This cannot be determined by summary judgment. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123; *Frantz v. Beechmont Pet Hosp.* (1996), 117 Ohio App.3d 351, 690 N.E.2d 897. At this point, the evidence

presented must be construed in the light most favorable to the nonmoving party, Walker. Based on our holding and our analysis, however, the granting of summary judgment is reversed only as to defendants East End Health Center, medical assistant Bonita King, receptionist Merrill Bryant, and Deborah Moss Berlon, R.N. The record before us establishes that they are the only defendants who played a part in the issues that must be decided on remand. The first assignment of error is, accordingly, sustained in part.

## DISPOSITION

The judgment in the appeal numbered C–970350 is affirmed. The summary judgment in the appeal numbered C–970344 is affirmed in part and reversed in part, and this cause is remanded for further proceedings in accordance with the terms of this decision.

*Judgment accordingly.*

SUNDERMANN, P.J., and GORMAN, J., concur.