[Cite as *Augustyn v. Dengenhard*, 2022-Ohio-4620.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
CARROLL COUNTY

MARK AUGUSTYN,

Plaintiff-Appellant,

v.

TRICIA DENGENHARD, ADMINISTRATOR FOR THE ESTATE OF
BARBARA J. FOLK,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CA 0957**

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2021 CVC 29730

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Marco G. Bocciarelli* and *Atty. Jeffrey H. Friedman,* Friedman, Domiano & Smith Co., LPA, 55 Public Square, Suite 1675, Cleveland, Ohio 44113, for Plaintiff-Appellant and

*Atty. Craig S. Cobb,* Law Offices of Craig S. Cobb, P.O. Box 258829, Oklahoma City, Oklahoma 73125, for Defendant-Appellee.

Dated:  December 16, 2022

**D'APOLITO, J.**

{¶1}    Appellant, Mark Augustyn, appeals from the January 26, 2022 judgment of the Carroll County Court of Common Pleas granting Appellee's, Tricia Dengenhard, Administrator of the Estate of Barbara J. Folk, Deceased, motion for summary judgment.

{¶2}    This appeal arises from a personal injury, premises liability complaint filed by Appellant arising from his fall down an open set of stairs at Barbara J. Folk's ("Folk") home, located at 6300 Plymouth Road SE, Carrollton, OH 44615.  Appellant was on the property accompanying his girlfriend, Darlene Prosser ("Prosser"), who had been asked by Folk a few days earlier to pick up a walker and drop it off at the property in advance of Folk returning home from a rehab facility.

{¶3}    On appeal, Appellant argues the trial court erred in granting Appellee's motion for summary judgment.  Appellant asserts he was not a trespasser and was on the premises by invitation of Folk (the property owner).  Appellant further claims that questions of fact exist as to whether he exceeded the scope of his invitation by going upstairs to the second floor.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶4}    The facts emanating from the record are as follows:[1]

{¶5}    Prosser is Appellant's longtime girlfriend.  (7/19/2021 Prosser's Deposition, p. 6-7).  Prosser and Folk knew each other from volunteering together at the Algonquin Mill.  (*Id.* at p. 7).  Prosser and Folk never socialized together, Prosser did not know any of Folk's family members, and Prosser did not go to Folk's funeral.  (*Id.* at p. 8).

{¶6}    Prior to the incident at issue, Prosser and Appellant had been to Folk's home a few times to pick up a dog as well as some expired canned goods to feed to Prosser's chickens.  (*Id.* at p. 9-10).  However, Prosser and Appellant had never been inside of Folk's home prior to the incident.  (*Id.* at p. 10).  Three days before the incident, Prosser had a phone call with Folk, who was in a rehab facility.  (*Id.* at p. 12).  Folk asked Prosser to pick up a walker from a hospice facility where Prosser was a volunteer and take it to Folk's house so it would be there when Folk came back home.  (*Id.*)

---

[1] Appellant, Appellee, and Prosser filed depositions and exhibits below.

{¶7} Appellant drove Prosser to Folk's house to drop off the walker and pick up more expired canned goods. (*Id.* at p. 16-17). Folk's property was cluttered and in a state of disrepair. (Defendant's Exhibits A, B, C). Prosser and Appellant walked up the exterior stairs and entered the first floor. (7/19/2021 Prosser's Deposition, p. 16-17). Prosser placed the walker right next to the stairs on the first floor. (*Id.* at p. 16). While on the first floor, Prosser then began going through some expired canned goods that Folk had given her permission to take home to feed Prosser's animals. (*Id.* at p. 17).

{¶8} At that time, Appellant wandered off telling Prosser that he was going upstairs to the second floor to check the windows. (*Id.* at p. 17-18). According to Prosser, Appellant decided to go upstairs on his own without asking her permission and without him ever speaking to Folk about being at the property. (*Id.* at p. 18-19). About 10 minutes later, Prosser heard a crash and saw Appellant at the bottom of the stairs. (*Id.* at p. 19-20). Prosser had no idea what Appellant was doing upstairs before he fell. (*Id.* at p. 20-21). All the expired canned goods were on the first floor which is where Prosser had also placed the walker. (*Id.*) Prosser never told Folk that they were going to go upstairs when they came to the property. (*Id.* at p. 21). Prosser acknowledged that Folk "would have no reason to believe that [she] or [Appellant] was going to go upstairs in her house that day[.]" (*Id.*) As far as Prosser knew, the second floor was not "opened for guests[.]" (*Id.* at p. 26).

{¶9} According to Appellant, he and Prosser went to Folk's house for two reasons: (1) to drop off a walker; and (2) to pick up expired canned goods. (7/19/2021 Appellant's Deposition, p. 10-11). They arrived in the afternoon around 12:30 or 1:00 p.m. (*Id.* at p. 14). Appellant described Folk's property as cluttered and in a state of disrepair. (*Id.* at p. 15). The walker was placed on the first floor and the expired canned goods were on the front porch and in the kitchen on the first floor. (*Id.* at p. 17).

{¶10} At some point, Appellant separated from Prosser and went downstairs to see what the condition was. (*Id.* at p. 18-19). Appellant then came back up to the first floor before wandering off to the second floor to check the windows. (*Id.* at p. 19). Appellant had never used the stairs prior to this occasion. (*Id.*) Appellant had no difficulty seeing the steps as there was plenty of natural light. (*Id.* at p. 20). Appellant also had no physical difficulty climbing the stairs. (*Id.*)

**{¶11}** Once Appellant got to the second floor, there was plenty of natural light coming through the windows so he had no difficulty seeing where he was walking. (*Id.* at p. 25). Without moving from the top of the stairs, Appellant could discern whether the windows were opened or closed. (*Id.* at p. 25-26). The second floor was unfinished and there was no guardrail around the open stairwell. (*Id.* at p. 28). Although it took him less than one minute to check the windows, Appellant spent five to ten minutes exploring the upstairs. (*Id.* at p. 29-31). At one point, Appellant yelled down to Prosser, "'[Folk's] got all kind of - - you should see all the fabric she has up here stored away.'" (*Id.* at p. 30).

**{¶12}** After he was done exploring the second floor, Appellant stepped on a piece of particle board laying over the stairwell opening, believing that it was part of the solid floor. (*Id.* at p. 32). A board broke causing Appellant to fall through the stairwell down to the first floor. (*Id.* at p. 35). When specifically asked about whether he had Folk's permission to be upstairs, Appellant admitted that he did not. (*Id.* at p. 43).

**{¶13}** Appellee is Folk's niece and became the administrator of Folk's estate after her death. (7/19/2021 Appellee's Deposition, p. 9). Aside from the unfinished condition of Folk's home, Appellee described the building as safe and sturdy. (*Id.* at p. 12).

**{¶14}** On February 23, 2021, Appellant filed a personal injury, premises liability complaint against Appellee. Appellant alleged that he was an invitee at Folk's home and that Folk was negligent in one or more of the following respects:

> a. In failing to maintain the above described premises.

> b. In creating and/or permitting the creation of and/or permitting the continued existence of a defect and/or dangerous condition and/or nuisance on the above described premises.

> c. In failing to properly and adequately warn plaintiffs and other pedestrians about a defect and/or dangerous condition and/or nuisance on the above described premises.

> d. In failing to adequately repair the flooring in the premises located at 6300 Plymouth Road, SE, Carrollton, OH 44615.

e. In failing to act reasonably once defendant knew or should have known about a defect and/or dangerous condition and/or nuisance on the above described premises.

(2/23/2021 Complaint, p. 2).

{¶15} Appellee filed an answer denying the central allegations in the complaint.

{¶16} On September 10, 2021, Appellee filed a motion for summary judgment arguing that Appellant was a trespasser at the time of the fall. Appellee alleged that in climbing the stairs to go up to the home's second floor, Appellant had exceeded the scope of any alleged invitation, and therefore, Folk could not be charged with having breached any duty of care owed to him as an invitee. Appellant filed a memorandum contra asserting that Folk failed to maintain the premises in a reasonably safe condition and breached her duty of care by failing to warn Appellant, an invitee, of a hidden danger. Appellee filed a reply stressing that Appellant failed to demonstrate the existence of any genuine issues of material fact to preclude a judgment in Appellee's favor.

{¶17} On January 26, 2022, the trial court granted Appellee's motion for summary judgment. Appellant filed a timely appeal and raises one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT DENGENHARD.**

{¶18} In his sole assignment of error, Appellant argues the trial court erred in granting Appellee's motion for summary judgment. In support, Appellant advances two issues: (1) whether he was "a trespasser when he was on the premises with the invitation of property owner Barbara Folk and engaged in a[n] activity that was for the benefit of property owner Barbara Folk"; and (2) whether "questions of fact exist as to whether Augustyn exceeded the scope of the invitation when the house in which the incident occurred is unfinished inside without any rooms or doors or barriers that would demonstrate exceeding the scope of an open invitation." (6/2/2022 Appellant's Brief, p.

Case No. 22 CA 0957

v). Because the trial court did not err in granting Appellee's motion for summary judgment, we will consider the issues in a consolidated fashion for ease of discussion.

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"(T)he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 10-12.

**{¶19}** Appellant asserts that because he was invited onto Folk's property and then injured while checking on the house for Folk's benefit, he was not a trespasser.

**{¶20}** A trespasser is defined as: "Someone who commits a trespass; one who intentionally and without consent or privilege enters another's property. In tort law, a landholder owes no duty to unforeseeable trespassers." Black's Law Dictionary (11th ed. 2019).

**{¶21}** An invitee, on the other hand, is defined as: "Someone who has an express or implied invitation to enter or use another's premises, such as a business visitor or a member of the public to whom the premises are held open. The occupier has a duty to inspect the premises and to warn the invitee of dangerous conditions." Black's Law Dictionary (11th ed. 2019).

**{¶22}** The record reveals that Appellant did not receive an invitation from Folk to come on to her property. Rather, Appellant relies on an invitation that Folk gave to Prosser to establish his status as an invitee. However, there is no dispute that the invitation to Prosser was not an open-ended one.

**{¶23}** Prosser was invited and went to Folk's house for two reasons: (1) to drop off a walker; and (2) to pick up expired canned goods. *See* (7/19/2021 Prosser's Deposition, p. 16-17); (7/19/2021 Appellant's Deposition, p. 10-11). The walker was placed on the first floor and the expired canned goods were on the front porch and in the kitchen on the first floor. (*Id.* at 20-21; 17). Nothing about Prosser's invitation anticipated or involved anyone exploring Folk's house or going up to the second floor. Prosser never told Folk that anyone would be going upstairs. (7/19/2021 Prosser's Deposition, p. 21). Prosser acknowledged that Folk "would have no reason to believe that [she] or [Appellant]

was going to go upstairs in her house that day[.]" (*Id.*)  As far as Prosser knew, the second floor was not "opened for guests[.]" (*Id.* at p. 26).

**{¶24}** In opposing summary judgment, Appellant presented no evidence that Folk, who had been in a nursing facility, should have known or could have anticipated that he would go to her house, separate from Prosser, and explore the second floor.  Although Appellant claims he came on to Folk's property as an invitee, such "invitation" did not extend to the unfinished second floor, a fact that Appellant himself acknowledged:

Q. Why did you believe that you had Barbara Folk's permission to go upstairs that day?

A. I didn't have her permission. I went to check on things as a friend because nobody else seemed to be doing anything around there.

(7/19/2021 Appellant's Deposition, p. 43).

**{¶25}** As stated, Appellant indicated he wanted to make sure the windows were closed upstairs.  Once Appellant got to the second floor, there was plenty of natural light coming through the windows so he had no difficulty seeing where he was walking.  (*Id.* at p. 25).  Without moving from the top of the stairs, Appellant could discern whether the windows were opened or closed.  (*Id.* at p. 25-26).  Although it took him less than one minute to check the windows, Appellant spent five to ten minutes exploring the upstairs.  (*Id.* at p. 29-31).  At one point, Appellant yelled down to Prosser, "'[Folk's] got all kind of - - you should see all the fabric she has up here stored away.'" (*Id.* at p. 30).

**{¶26}** It is clear from Appellant's foregoing deposition testimony that he went beyond merely checking to see if the windows were closed.  Once the scope of any invitation is exceeded, an invitee becomes a trespasser with the limited duty of care owed to "refrain from willful, wanton or reckless conduct which is likely to injure him."  *Gladon v. Greater Cleveland Regional Transit Authority*, 75 Ohio St.3d 312, 317 (1996); *see also Hensley v. Salomone*, 8th Dist. Cuyahoga No. 84456, 2005-Ohio-187, ¶ 22 ("A land owner may give permission to another to enter part of his property at will, therefore, without giving the person free reign to enter all parts of the property. When guests are invited into

one's home, they are not necessarily invited to rummage through the attic of the home without a separate and express invitation.")

{¶27} Based on the facts presented, Appellant meets the definition of being classified as a trespasser.  In opposing summary judgment, Appellant failed to introduce evidence of Folk's "willful, wanton or reckless conduct which [was] likely to injure him." *Gladon, supra,* at 317.

{¶28} Appellant also asserts that questions of fact exist as to whether he exceeded the scope of the invitation since Folk's house is unfinished inside without any rooms, doors, or barriers that would demonstrate exceeding the scope of an open invitation.

{¶29} Again, Appellant did not receive an invitation from Folk to come on to her property.  Rather, Appellant relies on an invitation that Folk gave to Prosser to establish his status as an invitee.  However, there is no dispute that the invitation to Prosser was not an open-ended one.

{¶30} In an attempt to support his position, Appellant submitted an affidavit from Richard Zimmerman ("Zimmerman"), a registered architect, purporting to opine that he was an invitee because there was no limitation placed on the invitation and Folk's unfinished home had no door blocking access to the second floor.  (Exhibits 3 and 4). We stress, however, that Appellant never testified that he was misled about the scope of the invitation due to the lack of a door and he admitted that he did not have Folk's permission to go upstairs to the second floor.

{¶31} The purpose for Prosser's presence at Folk's home was twofold: (1) to drop off a walker; and (2) to pick up expired canned goods.  The part of the property for that specified purpose was contained to the first floor.  When Appellant decided on his own to leave the first floor, he became a trespasser.  Zimmerman's opinion cannot be used to overcome established Ohio law.  *See Sikorski v. Link Elec. & Safety Control Co.*, 117 Ohio App. 3d 822, 831 (8th Dist.1997), citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989) (The fact that the plaintiff's experts stated these opinions does not create a legal duty on the defendant. Whether a legal duty is owed or not is a question of law for the court to determine).

**{¶32}** Upon consideration, the trial court did not err in granting Appellee's motion for summary judgment.

## CONCLUSION

**{¶33}** For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The January 26, 2022 judgment of the Carroll County Court of Common Pleas granting Appellee's motion for summary judgment is affirmed.

Donofrio, P.J., concurs.

Waite, J., concurs.

[Cite as *Augustyn v. Dengenhard*, 2022-Ohio-4620.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**