**Martin L. HANLIN, et al., Plaintiffs,**

v.

**OHIO BUILDERS AND REMODELERS, INC., et al., Defendants.**

No. 2:00–CV–179.

United States District Court, S.D. Ohio, Eastern Division.

March 28, 2001.

Robert C. Johns, Southeastern Ohio Legal Services–2, Steubenville, OH, Gary Michael Smith, Graham McClelland Ransbottom–2, Dover, OH, for Plaintiffs.

Yale R. Levy, Pope & Levy Co. L.P.A., Westerville, OH, Gregory S. Pope, Skrobot Pope Levy & Fisher LLP–2, Columbus, OH, David A. Wallace, Zeiger, Dreher & Carpenter, Columbus, OH, David K. Stein, Stein Chapin & Associates LLC–2, Columbus, OH, Thomas Robert McGrath,

McGrath & Breitfeller, Columbus, OH, for Defendants.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of the Motions to Dismiss filed by Defendants Equicredit Corporation (Doc. #11) and BR Financial (Doc. #14). For the reasons that follow, Defendant Equicredit's motion is granted in part and denied in part and, Defendant BR Financial's motion is granted in part and denied in part.

## I.

Plaintiffs Martin and Shirley Hanlin bring this action challenging the terms and conditions of credit extended to them in connection with home repair work. The Defendants in this action are: Ohio Builders and Remodelers ["Ohio Builders"], Equicredit Corporation, BR Financial and Express Financial Services. Plaintiffs' claims are brought pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and the Ohio Consumer Sales Practices Act, R.C. Chapter 1345. Plaintiffs also assert claims for common law fraud, breach of contract, breach of fiduciary duty and negligence. In addition, Plaintiffs assert that the Defendants violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.;* the Ohio Retail Installment Sales Act, R.C. § 1317; and engaged in corrupt practices as defined by O.R.C. § 2923.31. The Court entertains this action pursuant to 28 U.S.C. §§ 1331, 1367.

Plaintiffs, both of whom suffer from disabilities and who receive supplemental security income [1], entered into a contract with Defendant Ohio Builders for the installation of a new bathroom, storm windows, doors and other improvements to their Steubenville, Ohio home. The Plaintiffs informed Defendant Ohio Builders that they could pay $150.00 per month toward the repair work, which totaled $17,000.00. (*Complaint* at ¶ 6). Accordingly, the contract, executed on February 17, 1999, provided for 360 payments of $150 per month at a 9.75% interest rate. (*Id.* at ¶ 7). Although a notice of cancellation was attached to the contract, it was not executed. (*Id.* at ¶ 16). On February 18, 1999, a residential loan application was completed pursuant to a telephone call with Plaintiffs by one Vicki Bartoli of Defendant BR Financial. (*See Exhibit B* attached to *Complaint*). Defendant Ohio Builders completed the repair work in March 1999. (*Complaint* at ¶ 9). Plaintiffs allege, however, that the work was deficient in several respects [2]. Plaintiffs further allege that the deficient work was never repaired. (*Id.* at ¶ 12).

Sometime after March 1999, Plaintiffs received a telephone call from "a Columbus office" informing them that a woman would be visiting their home to execute additional paperwork in order that the construction company could be paid. (*Id.* at ¶ 13). Plaintiffs had already made payments of $150.00 for March and April 1999.

---

1. The record indicates that both Plaintiffs completed twelve years of school. Mr. Hanlin receives $825 per month in social security disability benefits and Mrs. Hanlin receives $149 per month in supplemental security income. Plaintiffs purchased their home for $11,000 following Mr. Hanlin's settlement with his employer for a work-related injury. (*Complaint* at ¶¶ 2–3).

2. For example, Plaintiffs claim that temporarily installed white siding was never removed from the house; that a bath tub was not installed; that the bathroom sink leaks; that the shower doors and towel racks fall off; that the cupboards fall down; that the windows are difficult to close; and that a front door was not installed. (*Complaint* at ¶¶ 10–11).

On April 9, 1999, one Candi Cole visited Plaintiffs' home; Plaintiffs completed paperwork which, unbeknownst to them or allegedly to Ms. Cole, resulted in a mortgage totaling $24,650.00 at an interest rate of 15.6% and a total credit line of $81,212.12. (*Id.* at ¶¶ 13; 21). Ms. Cole did not explain the papers to Plaintiffs, who apparently have inferior reading and writing skills. (*Id.* at ¶ 16). The mortgage included $1,972.00 in broker's fees, although the Plaintiffs allege that they were never notified of the need for a broker. (*Id.* at ¶ 20). Plaintiffs also claim that they never received notification of changes in the applicable interest rate; specifically, from 9.75% to 12.75%, 10.6%, 13.65% and, finally to 15.7999%. (*Complaint* at ¶ 24). Plaintiffs further claim that an Authorization for Release of Information was not signed until April 9, 1999. (*Id.* at ¶ 19).

Plaintiffs further allege that although Defendant BR Financial, the mortgage broker, requested an interest rate of 13.65%, Defendant Equicredit caused Plaintiffs to sign a mortgage for 15.7999%. (*Id.* at ¶ 25). Plaintiffs further allege that although the loan application made in February 1999 indicates a 12.75% fixed interest rate (*See Exhibit B* attached to *Complaint*), the good faith estimate, made in March 1999, indicates an interest rate of 10.6%. (*See Exhibit C, Id.*). Plaintiffs allege that they did not receive the good faith estimate until April 9, 1999, the date of Ms. Cole's visit. (*Complaint* at ¶ 27).

Following Ms. Cole's visit, Plaintiffs continued to make payments of $150.00 per month. All payments, except those made in March, April and August 1999, were returned. (*Complaint* at ¶ 28). Upon the return of payments, Plaintiffs contacted Defendant Equicredit which advised Plaintiffs that they were to pay $285.26 per month. (*Id.* at ¶ 30). Plaintiffs claim that they are currently receiving threats of foreclosure on their home. (*Id.* at ¶ 29). Plaintiffs filed the instant action on February 17, 2000. Defendants Equicredit and BR Financial move to dismiss all of the claims asserted against them.

## II.

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mayer v. Mylod,* 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

## III.

### A. Defendant Equicredit's Motion to Dismiss

Defendant Equicredit seeks dismissal of each of the twelve claims for relief asserted against it. The Court will consider the merits of each of the claims, in turn.

#### 1. Violation of the Ohio Home Solicitation Sales Act

Defendant contends that Plaintiffs fail to state a claim for violation of the Ohio

Home Solicitation Sales Act ["HSSA"], R.C. §§ 1345.21–1345.28. Pursuant to the HSSA, a buyer of consumer goods and services covered by the Act has the absolute right to cancel the sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase. R.C. § 1345.22. The HSSA further requires that every home solicitation sale be evidenced by a written agreement or offer to purchase, signed by the buyer, which agreement must provide notice of the buyer's right to cancellation. R.C. § 1345.23. Failure to comply with the provisions of the HSSA constitutes a deceptive practice in violation of R.C. § 1345.02. R.C. § 1345.28.

A "home solicitation sale" is defined as follows:

[A] sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to

purchase is made at a place other than the seller's place of business.

R.C. § 1345.21(A). Certain transactions are specifically excluded from the statute's reach; in particular, those in which the buyer is accorded a right of recission by 15 U.S.C. § 1635, the Truth in Lending Act ["TILA"], or regulations adopted pursuant thereto. R.C. § 1345.21(A)(7). "Consumer goods or services" are defined as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes, including courses or instruction or training regardless of the purpose for which they are taken." R.C. § 1345.21(E).

■ Defendant Equicredit contends that it cannot be held liable under the HSSA because the transaction entered into between Plaintiffs and Ohio Builders was subject to a right of recission under 15 U.S.C. § 1635[3]. This Court agrees.

■ Defendant further points out that the complaint fails to allege that the Defendant is vicariously liable to Plaintiffs. In response, Plaintiffs assert that they indeed seek to impose derivative liability on Equicredit for the acts of Defendant Ohio Builders.[4] Despite Plaintiffs' assertion,

---

**3.** 15 U.S.C. § 1635 provides, in pertinent part:

a) Disclosure of obligor's right to rescind
Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the

Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

**4.** Plaintiffs rely upon *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998), in support of this proposition. Plaintiffs' reliance on this case is, however, misplaced. In that case, the defendant home equity lender challenged an award of punitive damages on a theory of derivative liability for the acts of the contractor. The Court did not consider whether there was derivative liability under the HSSA.

the Court concludes that there is no basis upon which to hold Equicredit derivatively liable under the HSSA. Plaintiffs assert, in conclusory fashion, that liability arises pursuant to common and statutory law. The Court finds no authority under the HSSA upon which to premise derivative liability. Furthermore, Plaintiffs fail to articulate any common law basis for such liability. In sum, the Court concludes that Plaintiffs could prove no set of facts that would entitle them to relief under the HSSA against Defendant Equicredit.

### 2. Violation of the Consumer Sales Practices Act

Plaintiffs also seek to hold Defendant Equicredit liable under the Ohio Consumer Sales Practices Act ["CSPA"], R.C. § 1345.01 – § 1345.13. Defendant asserts that the CSPA is inapplicable to the transaction at issue.

The CSPA prohibits unfair, deceptive, or unconscionable acts or practices by "suppliers" in consumer transactions. R.C. § 1345.02; § 1345.03. A "supplier" is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. § 1345.01(C). A "consumer transaction" is defined as follows:

> a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of

these things. "Consumer transaction" does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients: and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.

R.C. § 1345.01(A). Defendant Equicredit asserts that loan financing does not constitute a "consumer transaction" for purposes of the statute because the Defendant is a dealer in intangibles, as defined by R.C. § 5725.01 [5]. Plaintiffs contend that Defendant Equicredit can be held derivatively liable under the CSPA by virtue of the fact that it holds a consumer credit contract purchased from Defendant Ohio Builders, which is a "supplier" for purposes of the CSPA. Plaintiffs rely upon *Milchen v. Bob Morris Pontiac–GMC Truck,* 113 Ohio App.3d 190, 680 N.E.2d 698 (1996) in support of their contention.

In *Milchen,* the Court of Appeals held that while financial institutions are exempt from liability under the CSPA, a bank can be held derivatively liable based upon the presence of a claim preservation clause pursuant to the FTC "holder rule" in the bank's finance agreement. The "holder rule" embodied in the contract provided for any holder of the credit contract to be subject to all claims and defenses which the debtor could assert against

---

**5.** A "dealer in intangibles" is defined as follows:

> [E]very person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling

> bonds, stocks, or other investment securities, whether on the person's own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings. Dealer in intangibles excludes institutions used exclusively for charitable purposes, insurance companies, and financial institutions....

the seller of the goods or services. The Court of Appeals reasoned that while the bank was not subject to the CSPA for its own actions, the FTC holder rule provision allowed the bank to be held derivatively liable for the defendant car dealer's violations of the CSPA by virtue of the bank's status as the holder of the credit contract. *Milchen,* 113 Ohio App.3d at 197, 680 N.E.2d 698.

As Defendant Equicredit points out, the contract attached to the complaint does not reflect the inclusion of an FTC "holder rule" provision. While Plaintiffs contend that the provision is indeed part of the contract, Plaintiffs also contend that even if the provision is absent, Defendant Equicredit was on notice that Defendant Ohio Builders had previously engaged in practices in violation of R.C. Chapter 1345. (*See Plaintiffs' Memorandum contra* at 3–4). The Court rejects the latter assertion as a basis for derivative liability. The Court further concludes that in the absence of evidence indicating that Defendant Equicredit was assigned a contract containing the FTC "holder rule," Plaintiffs' claim that the Defendant can be held derivatively liable under the CSPA must fail. The Court will, however, allow Plaintiffs fourteen (14) days in which to amend their complaint to allege, if Plaintiffs claim it is so, that the contract includes a "holder rule" provision.

### 3. Violation of the Truth In Lending Act

Defendant Equicredit moves to dismiss Plaintiffs' claim pursuant to 15 U.S.C. § 1601, *et seq.,* the Federal Truth in Lending Act ["TILA"]. In their complaint, Plaintiffs allege that Defendant Equicredit violated "material disclosure, notification, recission right and substantive requirements" of the Act and of Regulation Z. (*Complaint* at ¶ 41). The Defendant asserts that in the absence of more specifically pled facts, Plaintiffs' claim fails to state a basis for relief. The Defendant relies upon *Rhoden v. Metro Homes, Inc.,* No. 97–5062, 1997 WL 671744 (6th Cir. 1997) in support of this assertion.

In *Rhoden,* the Sixth Circuit held that the district court did not err in granting summary judgment in favor of the defendant on a claim for violation of the TILA where the plaintiffs had been given three opportunities to amend their complaint to more specifically set forth the claim and where there was no genuine issue of material fact in dispute. The Court concludes that the *Rhoden* case inapposite because Plaintiffs' complaint is pled with the specificity required under Rule 8. Furthermore, the Court cannot conclude that Plaintiffs could prove no set of facts in support of their claim that would entitle them to relief under the TILA. Defendant Equicredit's motion to dismiss the claim is therefore without merit.

### 4. Common Law Fraud

Defendant Equicredit moves to dismiss Plaintiffs' fraud claim. In their complaint, Plaintiffs allege that "Defendants made material representations as to financing arrangements and/or rates, the amount of monthly payments, the delivery of notices and the execution of documents on certain dates, and the necessity or performance of services paid for by plaintiffs which were not performed or necessary to the transaction(s)." (*Complaint* at ¶ 43). Defendant Equicredit contends that Plaintiffs's claim is not pled with the particularity required by Rule 9.

Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In order to satisfy this requirement, the complaint must state "the time, place and content of the false representation, the fact misrepresented, and the nature of what was ob-

tained or given as a consequence of the fraud." *Baker v. Conlan,* 66 Ohio App.3d 454, 458, 585 N.E.2d 543 (1990). The Court concludes that Plaintiffs' complaint falls short of this pleading requirement. The Court notes that Plaintiffs indicate an intent to withdraw the claim. (*Plaintiffs' Memorandum contra* at 6, n. 6). In light of Plaintiffs' representation, Defendant Equicredit's motion to dismiss the claim is granted.

### 5. Breach of Contract

Defendant Equicredit moves to dismiss Plaintiffs' count five which alleges that "Defendants have breached any contracts with Plaintiffs (*sic* )." (*Complaint* at ¶ 46). Defendant Equicredit asserts that Plaintiffs' claim is without merit because it fails to identify the nature of the purported contractual relationship. Defendant also asserts that Plaintiffs' dissatisfaction with the terms of the mortgage does not give rise to a breach of contract claim. Plaintiffs fail to articulate the basis for the claim in their memorandum *contra.* In light of Plaintiffs' failure to plead with the requisite Rule 8 specificity in support of a breach of contract theory, the Court concludes that Plaintiffs' claim fails to state a basis for relief. Plaintiffs have not sought leave to amend. Defendant Equicredit's motion to dismiss the claim is meritorious.

### 6. Negligence

Defendant Equicredit moves to dismiss Plaintiffs' count eight which states that Defendants' "actions or failures to act as complained of herein constitute[ ] negligence, and/or gross negligence which has injured Plaintiffs." (*Complaint* at ¶ 51). Defendant asserts that the claim fails to state a basis for relief since Plaintiffs do not identify any legal duty on the Defendant's part.

■ Indeed, in order to prevail on a claim of negligence, the existence of a duty

on the part of the defendant must be shown. *Logsdon v. Fifth Third Bank of Toledo,* 100 Ohio App.3d 333, 341, 654 N.E.2d 115 (1994). The existence of a duty is a question of law for the Court. *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). It is well-settled in Ohio that the relationship between a lending institution and customer does not ordinarily give rise to fiduciary obligations. *See Nichols v. Chicago Title Ins. Co.,* 107 Ohio App.3d 684, 698, 669 N.E.2d 323 (1995). Moreover, under Ohio law, the existence of a contract action generally excludes a cause of action based upon the same conduct sounding in tort. *Wolfe v. Continental Cas. Co.,* 647 F.2d 705, 710 (6th Cir.1981). In sum, the Court concludes that Plaintiffs could prove no set of facts that would entitle them to relief on claim for negligence. Defendant Equicredit's motion to dismiss is granted as to the claim for negligence.

### 7. Violation of the Equal Credit Opportunity Act

Defendant Equicredit moves to dismiss Plaintiffs' count nine which alleges that, "[i]n their dealings with Plaintiffs, [the] Defendants violated the duties imposed on them" under the Equal Credit Opportunity Act ["ECOA"], 15 U.S.C. § 1691, *et seq.* (*Complaint* at ¶ 53).

■ The ECOA makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—on the basis of race, color, religion, national origin, sex or marital status, or age . . . because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(1)–(3). A case under the ECOA follows the same burden-shifting analysis employed in Title VII cases. *See McGee v.*

*East Ohio Gas Co.*, 111 F.Supp.2d 979, 984 (S.D.Ohio 2000). A *prima facie* case under the ECOA requires that the Plaintiff establish: 1) that he or she engaged in a statutorily protected activity; 2) that he or she suffered an adverse credit action; and 3) that a causal connection exists between the two. *Id.*

 Defendant Equicredit asserts that Plaintiffs in this case fail to plead sufficient facts in support of a *prima facie* case under the ECOA. Plaintiffs contend, in conclusory fashion, that because "Defendant Equicredit repeatedly changed the terms of the contract (mortgage) and each change [was made] without providing the proper notices" that Plaintiffs state a claim under the ECOA. (*Plaintiff's Memorandum contra* at 7). Plaintiffs fail to cite any authority in support of this position. The Court concludes that Plaintiffs could prove no set of facts in support of their claim that would establish a violation of the ECOA. Plaintiffs do not contend that they engaged in any activity protected under the ECOA or that an adverse action was taken on account of a protected activity. Thus, Defendant Equicredit's motion to dismiss Plaintiffs' ECOA claim is meritorious.

### 8. Violation of the Fair Credit Reporting Act

Plaintiffs' tenth claim alleges that the Defendants "willfully and/or negligently violated the duties imposed on them by the FCRA, including but not limited to obtaining [and] making unauthorized and impermissible use of consumer information concerning Plaintiffs." (*Complaint* at ¶ 55). Defendant Equicredit asserts that it was legally entitled to obtain and to use Plaintiffs' credit report in connection with providing financing for Plaintiffs' home improvements. Plaintiffs fail to respond to this assertion.

The FCRA, 15 U.S.C. § 1681, *et seq.*, imposes civil liability on the user of credit information for willful or negligent noncompliance with any provision of the Act. 15 U.S.C. § 1681n, § 1681o. The Act specifies, *inter alia*, that:

> Whenever credit for personal, family, or household purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the reasons for such adverse action received within sixty days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer.

15 U.S.C. § 1681m(b)(1).

The FCRA also prohibits a user of credit information from obtaining a credit report under false pretenses. 15 U.S.C. § 1681q. Whether a credit report was obtained under false pretenses is determined with reference to the permissible purposes for which a credit report may be obtained under 15 U.S.C. § 1681b. *See Hansen v. Morgan*, 582 F.2d 1214, 1219–20 (9th Cir.1978). As Defendant Equicredit correctly points out, it is permissible to obtain and use a credit report "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit, or review or collection of an account of the consumer...." 15 U.S.C. § 1681b(3)(A).

■ The Court concludes that Defendant Equicredit was lawfully entitled to use the Plaintiffs' credit report pursuant to 15 U.S.C. § 1681b(3)(A). Thus, to the extent Plaintiff asserts a claim under § 1681q, the claim must fail. It is unclear to the Court, however, whether Plaintiffs intend to state a claim under § 1681m. Plaintiff's complaint could, arguably, be construed to allege that Defendant Equicredit increased the rate of credit to Plaintiffs based upon information pertaining to Plaintiffs' creditworthiness. Because the Court is not convinced that amendment would be pointless, Plaintiffs may, within fourteen (14) days from the date of this Order, move to amend in order to plead an action under § 1681m.

### 9. Alleged Corrupt Activity

Defendant Equicredit moves to dismiss Plaintiffs' claim under R.C. § 2923.31, *et seq.*, Ohio's Civil Racketeer Influenced and Corrupt Organizations ["RICO"] statute. Plaintiffs' count eleven alleges that the Defendants are engaged in an enterprise, within the meaning of the statute, "through a pattern of corrupt activity which includes but is not limited to mail fraud, wire fraud, forgery, theft and/or theft by deception involving property the value of which exceeds $500.00." (*Complaint* at ¶ 58). Defendant Equicredit asserts that the complaint fails to allege facts of a "pattern of racketeering" to support liability under the statute. In response, Plaintiffs assert that a violation of the Ohio civil RICO statute need not be pled with particularity. Plaintiffs fail to further articulate the facts pertinent to their RICO claim.

For purposes of the Ohio RICO statute, an "enterprise" includes "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. § 2923.31(C). A "pattern of corrupt activity" is defined as follows:

[T]wo or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

R.C. § 2923.31(E). "Corrupt activity" is statutorily defined to include the "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" any of the various violations enumerated in the statute. *See* R.C. § 2923.31(I)(a)–(f).

■ Defendant Equicredit asserts that the mortgage transaction at issue is a "single event" and is, therefore, outside the scope of the Ohio RICO statute. In support of this position, Defendant relies upon the rule that conduct which involves a single transaction, one victim and which takes place over a short period of time, does not constitute a pattern of corrupt activity for purposes of the RICO statute. *See Krieger Ford, Inc. v. Chase Motors, Inc.*, No. 98AP–982, 1999 WL 561693 (Ohio App. August 3, 1999), citing *Terry A. Lambert Plumbing v. Western Sec. Bank*, 934 F.2d 976, 981 (8th Cir.1991). The Court agrees. Plaintiffs' complaint fails to allege that the events surrounding the mortgage transaction were not closely related in time so as to constitute a single event. Thus, the Court concludes that Defendant Equicredit's motion to dismiss Plaintiffs' Ohio RICO claim is meritorious.

### 10. Violation of the Retail Installment Sales Act

Defendant Equicredit moves to dismiss Plaintiffs' count twelve, which alleges that

the "transactions with OBR and Equicredit were one or more retail installment sales contracts ... subject to and governed by R.C. Chapter 1317." (*Complaint* at ¶ 60). Plaintiffs further assert that the Defendants contracted for and collected charges or security interests "prohibited by, or in excess of those permitted by the Retail Installment Sales Act" ["RISA"]. (*Id.* at ¶ 61). Defendant Equicredit asserts that Plaintiffs fail to state a claim under RISA because a mortgage loan is outside the statutory definition of a retail installment sale.

■ Defendant Equicredit's motion to dismiss is well-taken. Ohio courts consistently hold that RISA does not apply to financial institutions engaged in lending activities. *See Vannoy v. Capital Lincoln–Mercury Sales, Inc.,* 88 Ohio App.3d 138, 143, 623 N.E.2d 177 (1993); *Huntington Bank v. Freeman,* 53 Ohio App.3d 127, 560 N.E.2d 251 (1989). Plaintiffs' claim under RISA against Equicredit is therefore dismissed.

## B. Defendant BR Financial's Motion to Dismiss

Defendant BR Financial also moves to dismiss each of the claims Plaintiffs assert against it.

### 1. Violation of the Ohio Consumer Sales Practices Act

Plaintiffs' first claim against BR Financial alleges a violation of the Ohio Consumer Sales Practices Act ["CSPA"]. As stated *supra,* the CSPA prohibits unfair, deceptive or unconscionable acts or practices by "suppliers" in "consumer transactions." R.C. § 1345.02; § 1345.03. BR Financial argues that it is not a "supplier" for purposes of the statute and, furthermore, that the transaction at issue is excluded from the definition of a consumer transaction by virtue of BR Financial's status as a broker under R.C. § 5725.01.

The Court concludes that Plaintiff's CSPA claim against Defendant BR Financial fails for the same reasons that the claim against Equicredit fails, as stated *supra,* in the Court's analysis. In addition, unlike the situation with respect to Equicredit, the Court finds no basis upon which to premise derivative liability under the CSPA against Defendant BR Financial. Thus, Plaintiffs' claim must be dismissed.

### 2. Common Law Fraud

Defendant BR Financial also moves to dismiss Plaintiffs' common law fraud claim. Plaintiffs represent that they are withdrawing the claim. (*Plaintiffs' Memorandum contra* at 3, n. 2). In light of this representation, the claim is dismissed.

### 3. Breach of Contract

Defendant BR Financial asserts that Plaintiffs' breach of contract claim fails to state a basis for relief. In their complaint, Plaintiffs assert that the Defendants breached "any contracts with Plaintiffs." (*Complaint* at ¶ 46). In connection with their claim for breach of fiduciary duty, Plaintiffs contend that a February 21, 1999 document governs a purported relationship between Plaintiffs and Defendant BR Financial. (*Id.* at ¶¶ 49–50). The Court observes that the document is not part of the record.

In light of Plaintiffs' allegations, the Court cannot conclude at this juncture that Plaintiffs could prove no set of facts that would entitle them to relief under a breach of contract theory. The Court will therefore permit Plaintiffs fourteen (14) days from the date of this Order within which to amend their breach of contract claim against Defendant BR Financial.

#### 4. Violation of R.C. § 1322.07

BR Financial moves to dismiss Plaintiffs' claim under R.C. § 1322.07(B), (C), which provisions prohibit licensed mortgage brokers from "[m]ak[ing] false promises through advertising or other means or engag[ing] in a continued course of misrepresentations" and "[e]ngag[ing] in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. § 1322.07(B), (C). Defendant BR Financial asserts that Plaintiffs fail to state a basis for relief under these statutory provisions.

Plaintiff alleges the following with respect to Defendant BR Financial:

> The broker, Defendant BR Financial requested an interest rate of 13.65% but Defendant Equicredit had the Hanlins sign the mortgage for 15.7999%. As of February 18, 1999, Defendant BR Financial indicated an interest rate of 12.75% on the initial application ... however, the Good Faith Estimate of March 3, 1999 shows an interest rate of 10.6%.

*Complaint* at ¶¶ 25–26. The Court finds these allegations insufficient for purposes of a claim under R.C. § 1322.07(B), (C). The Court is not convinced at this juncture that the Plaintiffs could prove no set of facts in support of their claim that Defendant BR Financial engaged in conduct that is "improper, fraudulent, or dishonest." Thus, Defendant's motion to dismiss this claim is denied.

#### 5. Breach of Fiduciary Duty

Defendant BR Financial moves to dismiss Plaintiffs' claim for breach of fiduciary duty. Plaintiffs allege that "[a]ccording to a document dated February 21, 1999, Defendant BR Financial, for compensation, undertook to act as agent and fiduciary for Plaintiffs in arranging financing according to the terms of the February 17, 1999 home improvement contract with OBR. With legal malice, Defendant BR Financial violated its fiduciary obli-

gations...." (*Complaint* at ¶ 49–50). Defendant asserts that no fiduciary relationship exists with the Plaintiffs.

Under Ohio law, a fiduciary relationship "is one in which special trust and confidence is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Employment of Pratt*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). A person who occupies a fiduciary relationship to another acts as an agent and owes utmost loyalty and honesty to the principal. *Testa v. Roberts*, 44 Ohio App.3d 161, 165, 542 N.E.2d 654 (1988). The fiduciary relationship may arise out of a contract or out of an informal relationship where both parties understand that special trust and confidence has been reposed. *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981).

The Court cannot conclude, at this juncture in the action, that Plaintiffs could prove no set of facts in support of their claim for breach of fiduciary duty against Defendant BR Financial. Thus, Defendant BR Financial's motion to dismiss is without merit.

#### 6. Negligence

Defendant BR Financial moves to dismiss Plaintiffs' claim that "Defendants' actions or failures to act as complained of herein constitute[ ] negligence and/or gross negligence which has injured Plaintiffs." (*Complaint* at ¶ 51). Defendant argues that because Plaintiffs fail to identify any duty of care allegedly owed to them, that the claim must fail. Plaintiffs fail to further articulate the basis for their claim.

As stated *supra*, in order to prevail on a claim of negligence, the existence of a duty on the part of the defendant must be shown. *Logsdon v. Fifth Third Bank of Toledo*, 100 Ohio App.3d 333, 341, 654

N.E.2d 115 (1994). In addition, in Ohio, the existence of a contract generally excludes a cause of action based upon the same conduct sounding in tort. *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir.1981). Plaintiffs in the case at bar purport to rely upon an contract dated February 21, 1999 as a basis for relief against Defendant BR Financial. In light of the alleged existence of such agreement and, in the absence of an identifiable duty on the Defendant's part, the Court concludes Plaintiffs' negligence claim fails to state a basis for relief. Defendant BR Financial's motion to dismiss is well-taken.

### 7. Violation of the Equal Credit Opportunity Act

BR Financial moves to dismiss Plaintiffs' claim under the ECOA, 15 U.S.C. § 1691, *et seq.* As with the claim against Defendant Equicredit, Plaintiffs fail to plead sufficient facts to support a *prima facie* case for violation of the ECOA against Defendant BR Financial. Plaintiffs merely allege that, in some unspecified manner, that BR Financial engaged in conduct in violation of the Act. Plaintiffs fail, however, to allege that they engaged in conduct protected by the Act or that they suffered adverse consequences as a result of BR Financial's alleged discrimination. The Court concludes that Plaintiffs fail to state a claim for relief under the ECOA.

### 8. Violation of the Fair Credit Reporting Act

Defendant BR Financial contends that because it obtained Plaintiffs' credit report for a permissible purpose under 15 U.S.C. § 1681(b)(3)(A), that it cannot be held liable for violation of the FCRA. Plaintiffs' memorandum *contra* fails to address Defendant's assertion.

As set forth *supra*, the FCRA imposes civil liability upon the user of credit information for willful or negligent noncompliance with any provision of the Act. 15 U.S.C. § 1681n, § 1681o. The FCRA further prohibits a user of credit information from obtaining a credit report under false pretenses. 15 U.S.C. § 1681q. In this case, it appears undisputed that Defendant BR Financial obtained Plaintiffs' credit report for a permissible purpose, *i.e.*, obtaining a mortgage rate for financing Plaintiffs' home improvements. Thus, while Plaintiffs' claim under the FCRA is not a model of clarity, the Court concludes that Plaintiffs could prove no set of facts that would entitled them to relief under 15 U.S.C. § 1681q. As with Plaintiffs' claim under the FCRA against Defendant Equicredit, however, the Court concludes that Plaintiffs' complaint could arguably state a claim against Defendant BR Financial for violation of 15 U.S.C. § 1681m. The Plaintiffs may, within fourteen (14) days of the date of this Order, move to amend their complaint to state a claim under § 1681m. The Defendant's motion to dismiss Plaintiffs' claim under the FCRA is therefore denied at this juncture.

### 9. Alleged Corrupt Activity

Defendant BR Financial moves to dismiss Plaintiffs' claim under R.C. § 2923.31, *et seq.*, Ohio's Civil RICO statute. As the Defendant points out, in order to properly plead a RICO violation, the Plaintiffs must allege facts which establish that the Defendant engaged in conduct in violation of two or more offenses identified in the statute; that a pattern of corrupt activity exists; and that the Defendant participated in an enterprise for purposes of the RICO statute. *See Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 290–91, 629 N.E.2d 28 (1993). Plaintiffs' RICO claim is, however, wholly conclusory in nature. Moreover, as stated *supra*, the Court concludes that Plaintiffs' complaint fails to overcome the rule that

circumstances which are so closely related in time so as to constitute a "single event" fail to give rise to a claim for corrupt activity. In sum, the Court finds Defendant BR Financial's motion to dismiss the RICO claim, meritorious.

### IV.

In light of the foregoing, Defendant Equicredit's Motion to Dismiss (Doc. # 11) is **GRANTED in part and DENIED in part.** Defendant BR Financial's Motion to Dismiss (Doc. # 14) **is GRANTED in part and DENIED in part.** The Plaintiffs have **fourteen (14) days** from the date of this Order to amend their complaint, consistent with the foregoing.

**IT IS SO ORDERED.**